**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **Kent Bowen, individually and on behalf of others similarly situated,** | |
| *Plaintiff,* | **Case No. 1:21-CV-00471-MHC** |
| v. | |
| **Porsche Cars N.A., Inc.** | |
| *Defendant.* | |

**PORSCHE CARS NORTH AMERICA, INC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

**(Oral Argument Requested – See Motion)**

i

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................1

II.     FACTUAL ALLEGATIONS ................................................................2

III.    LEGAL STANDARD AND CHOICE OF LAW .................................4

    A.      Legal Standard for Motion to Dismiss ......................................4

    B.      Choice of Law for Plaintiff's Claims ........................................5

IV.     THE COMPLAINT FAILS TO STATE ANY CLAIM UPON
       WHICH RELIEF CAN BE GRANTED .............................................7

    A.      Plaintiff Fails to State a Claim for Trespass to Personalty ..................7

        1.      *The Complaint Does Not Allege that PCNA—as Opposed
                to SiriusXM—Intentionally Committed the Alleged
                Trespass* .......................................................................8

        2.      *Plaintiff Consented to the Alleged Trespass* .............................11

    B.      Plaintiff Fails to State a Claim under the Computer Fraud and
        Abuse Act (18 U.S.C. § 1030) .............................................14

        1.      *Plaintiff Consented to Receiving Satellite Radio
                Transmissions* ..............................................................15

        2.      *Plaintiff Fails to Allege Sufficient Damages to Assert a
                CFAA Claim* ...............................................................18

    C.      Plaintiff Fails to State a Negligence Claim .......................................20

    D.      Plaintiff Fails to State an Unjust Enrichment Claim..........................24

V.      CONCLUSION........................................................................................25

ii

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
  416 F.3d 1242 (11th Cir. 2005) ...........................................................4

*Allstate Ins. Co. v. U.S. Assocs. Realty, Inc.*,
  464 N.E.2d 169 (Ohio Ct. App. 1983)................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................5, 19, 20

*Auld v. Forbes*,
  848 S.E. 2d 876 (Ga. 2020) ...................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................5

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020)................................................12

*Bryant v. Avado Brands, Inc.*,
  187 F.3d 1271 (11th Cir. 1999) .............................................................4

*Campbell v. Ailion*,
  790 S.E.2d 68 (Ga. Ct. App. 2016).............................................24, 25

*Carmichael v. Kellogg, Brown & Root Servs. Inc.*,
  572 F.3d 1271 (11th Cir. 2009) ..........................................................21

*Chrysler Corp. v. Batten*,
  450 S.E. 2d 208 (Ga. 1994) .................................................................23

*Cleveland Cent. Cath. High Sch. v. Mills*,
  2018-Ohio 4873 ¶¶ 40–44 (Ct. App. 2018)........................................7

*Cobb Theatres III, LLC v. AMC Ent. Holdings, Inc.*,
  101 F. Supp. 3d 1319 (N.D. Ga. 2015)................................................3

*CompuServe Inc. v. Cyber Promotions, Inc.*,
  962 F. Supp. 1015 (S.D. Ohio 1997) ...............................8, 11, 13, 14

*Coon v. Med Ctr., Inc.*,
    797 S.E. 2d 828 (Ga. 2017) ................................................................5

*Diamond Power Int'l, Inc.v. Davidson*,
    540 F. Supp. 2d 1322 (N.D. Ga. 2007)......................................17, 18

*Douglasville v. Queen*,
    514 S.E.2d 195 (Ga. 1999) ..............................................................21

*Dowis v. Mud Slingers, Inc.*,
    621 S.E. 2d 413 (Ga. 2005) ...............................................................5

*Glock v. Glock*,
    247 F. Supp. 3d 1307 (N.D. Ga. 2017)...........................................5, 6

*In re Gilead Scis. Sec. Litig.*
    536 F.3d 1049, 1055 (9th Cir. 2008) ...............................................13

*Houston v. Bedgood*,
    588 S.E. 2d 437, 440 (Ga. Ct. App. 2003)......................................23

*In re AOL, Inc. Version 5.0 Software Litig.*,
    168 F. Supp. 2d 1359 (S.D. Fla. 2001) ......................................15, 16

*In re Apple Inc. Device Performance Litig.*,
    347 F. Supp. 3d 434 (N.D. Cal. 2018)..............................................15

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .........................................................13

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012).................................15, 16, 17

*Keen v. Bovie Med. Corp.*,
    Case No. 8:12-cv-305-T-24-EAJ, 2013 U.S. Dist. LEXIS 64999 (M.D.
    Fla. May 7, 2013)..............................................................................18

*Lau's Corp. Inc., v. Haskins*,
    405 S.E.2d 474 (Ga. 1991) ................................................................6

*Link v. US Bank Nat'l Ass'n*,
    No. 13CVH-07-7793, 2015 Ohio Misc. LEXIS 8553 (Ct. Com. Pl.
    Feb. 5, 2015) ......................................................................................9

iv

*Lyle v. PK Mgmt., LLC,*
    2010-Ohio-2161 (Ct. App. 2010) ....................................................................6

*MCI Worldcom Network Servs. Inc., v. W. M. Brode Co.,*
    411 F. Supp. 2d 804 (N.D. Ohio 2006) ..........................................................9

*Mercer v. Halmbacher,*
    44 N.E.3d 1011 (Ohio Ct. App. 2015)............................................................6

*Mortg. Now, Inc. v. Stone,*
    Case No. 3:09cv80/MCR/MD, 2010 U.S. Dist. LEXIS 152776 (N.D. Fla.
    Sep. 29, 2010) ................................................................................................18

*Oxford Asset Mgmt., Ltd. v. Jaharis,*
    297 F.3d 1182 (11th Cir. 2002) ......................................................................4

*Philips Med. Sys. Neth. B.V. v. TEC Holdings, Inc.,*
    Civil Action No. 1:17-CV-02864, 2018 U.S. Dist. LEXIS 225725 (N.D.
    Ga. Mar. 14, 2018)........................................................................................18

*Rome v. Jordan,*
    426 S.E.2d 861 (Ga. 1993) ...........................................................................21

*Sitterli v. Csachi,*
    811 S.E. 2d 454 (Ga. Ct. App. 2018)..............................................................6

*Speedway Motorsports, Inc. v. Pinnacle Bank,*
    727 S.E.2d 151 (Ga. Ct. App. 2012)..............................................................25

*Thurmond v. Compaq Comput. Corp.,*
    171 F. Supp. 2d 667 (E.D. Tex. 2001)...........................................................19

*Universal Tube & Rollform Equip. Corp. v. Youtube, Inc.,*
    504 F. Supp. 2d 260 (N.D. Ohio 2007) .....................................................9, 10

*Wells Fargo Bank, N.A. v. Jenkins,*
    744 S.E.2d 686 (Ga. 2013) ........................................................................21, 22

*Werk v. Parker,*
    249 U.S. 130 (1919)........................................................................................3

## I.    INTRODUCTION

Plaintiff Kent Bowen ("Plaintiff" or "Mr. Bowen") alleges that he purchased a used 2011 Porsche Panamera in 2012, which was outfitted with a Porsche Communication Management ("PCM") system and a SiriusXM satellite radio antenna. Mr. Bowen claims that eight years later, in May 2020, his vehicle received a remote satellite signal, referred to in the Complaint as the "Update".

The Complaint does not definitively allege who created the Update, who sent the Update, nor what information the Update contained. The Complaint also does not allege that Mr. Bowen has ever had any relationship—contractual or otherwise—with Porsche Cars North America, Inc. ("PCNA") or SiriusXM. But based on the scant and conclusory allegations of the Complaint, Plaintiff seeks damages and equitable relief for both himself and a putative class of Porsche vehicle owners related to the alleged May 2020 Update.

Plaintiff alleges four overlapping causes of action against PCNA which attempt—and fail—to find a theory of liability for how PCNA is responsible for Plaintiff's alleged damages. As set forth below, Plaintiff's Complaint should be dismissed in its entirety and with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has not and cannot allege facts sufficient to state any claims against PCNA for which relief can be granted.

## II.    FACTUAL ALLEGATIONS

Mr. Bowen purchased a used 2011 Porsche Panamera from an unidentified seller in 2012. Compl. ¶ 40. That Panamera came equipped with a PCM—either 3.0 or 3.1—and a SiriusXM radio antenna. *Id.* ¶¶ 1, 41, 49. The PCM is the "infotainment" system (media console) that comes in various Porsche models and allows drivers to operate GPS, telephone, radio, and other audio features through the PCM. *Id.* ¶¶ 18, 19.

Mr. Bowen claims that PCMs in his and other Porsche vehicles received a satellite radio signal around Memorial Day 2020 that carried an update for the PCM. *Id.* ¶¶ 2, 3, 23. Mr. Bowen admits that he does not know whether the signal originated with PCNA, but alleges—on information and belief—that PCNA or SiriusXM (with PCNA's assistance or direction) sent the alleged signal.[1] *Id.* ¶ 3. According to Mr. Bowen, any Porsche owner with a PCM and a satellite radio antenna received the signal, regardless of whether they subscribed to premium content from SiriusXM. *Id.* ¶ 24. He further alleges that he did not consent to receiving the radio signal and update because he did not subscribe to SiriusXM's premium content and was not notified about the update. *Id.* ¶¶ 3, 23, 44.

---

[1] If the Court allows Plaintiff to proceed on any of his claims, PCNA would introduce evidence demonstrating that it did not and cannot update PCMs remotely as alleged.

2

The alleged signal and Update purportedly caused PCMs to continuously reboot until "hard resets" were completed in the PCMs' settings. *Id*. ¶¶ 27, 35. The reboot "loop" allegedly damaged an unidentified number of vehicles with PCM 3.0 and 3.1 in myriad ways, including by draining the battery, damaging the hard drive, causing a static sound that was annoying and (according to Mr. Bowen) maybe dangerous, among other inconveniences. *Id*. ¶ 2, 27. The PCM in Mr. Bowen's Panamera allegedly sustained permanent damage to the hard drive, requiring a local dealer to replace his unit. *Id*. ¶ 45. Mr. Bowen paid $3,270.78 to replace his PCM (*id*. ¶ 47) and the time devoted to facilitating the repairs allegedly cost him an additional $2,000, for a grand total of 5,270.78. *Id*. ¶¶ 42, 48.

To understand Mr. Bowen's allegations about satellite radio signals at issue, it is necessary to briefly address how satellite radio works. Satellite radio providers like SiriusXM send a signal from a station on the ground to (as the name implies) satellites that orbit earth. *Satellite Radio*, Britannica, available at: https://www.britannica.com/technology/satellite-radio.[2]   Broadcasting   the   radio

---

[2] The Court may take judicial notice of Encyclopedia Britannica's description of the mechanics of satellite radio Under Federal Rule of Evidence 201 because it is "a fact that is not subject to reasonable dispute because it…can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Cobb Theatres III, LLC v. AMC Ent. Holdings, Inc.*, 101 F. Supp. 3d 1319, 1328 (N.D. Ga. 2015); *see also Werk v. Parker*, 249 U.S. 130, 132–33 (1919) (approving of the

signal first to orbiting satellites and then back down to the ground permits satellite radio providers to transmit signals over a much greater area than traditional terrestrial radio. *Id*. Specialized receivers such as those placed in automobiles receive the signal and decode its contents, which allows the listener to hear what was transmitted. *Id*. Most providers require a subscription in order to decode premium radio content (*id*.), though providers sometimes send free content to vehicles equipped with a satellite radio antenna. Compl. ¶ 23.

## III.   LEGAL STANDARD AND CHOICE OF LAW

### A.    Legal Standard for Motion to Dismiss

Under Rule 12(b)(6), the Court must take all well-pleaded facts as true and construe reasonable inferences in the light most favorable to the non-moving party. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). Importantly, this does not require the Court to draw all the plaintiff's requested inferences irrespective of their reasonableness. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1284 (11th Cir. 2005). Further, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir.

Circuit Court taking judicial notice of the use of animal-hair mats in oil extraction as described in Encyclopedia Britannica because the facts "appeared so abundantly from standard works accessible in every considerable library.").

2002). To survive dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

## B.    Choice of Law for Plaintiff's Claims

Georgia applies the rule of *lex loci delicti* to tort claims, meaning the substantive law of the state where the tort is committed governs. *See Auld v. Forbes*, 848 S.E. 2d 876, 878 (Ga. 2020); *Dowis v. Mud Slingers, Inc.*, 621 S.E. 2d 413, 414 (Ga. 2005) (reaffirming the rule of *lex loci delicti*). A tort is committed where the injury is suffered, not where the allegedly tortious act is committed; generally, this is the "place where the last event necessary to make an actor liable for an alleged tort takes place." *Auld* 848 S.E.2d. at 879. Notwithstanding this rule, if the tort is governed by common law in Georgia and in the state where the tort was committed, Georgia courts will apply Georgia law. *Coon v. Med Ctr., Inc.*, 797 S.E. 2d 828 (Ga. 2017). But where Georgia statutory law provides the cause of action, "absent a clear statement to the contrary, the Georgia courts refrain from applying statutes extraterritorially." *Glock v. Glock*, 247 F. Supp. 3d 1307, 1318 (N.D. Ga. 2017).

Applying these principles, Plaintiff's trespass claim is governed by Ohio law, and his remaining common law claims are governed by Georgia law. The Complaint alleges that Plaintiff "is, and at all times relevant was, a resident of Columbus, Ohio" (Compl. ¶ 5) and that his allegedly damaged vehicle was repaired at his local dealer in Ohio. *Id.* ¶ 45, Ex. A. Because Plaintiff's alleged damage occurred where his vehicle was located (Ohio), under the *lex loci delicti* rule, the substantive law of Ohio would apply. With respect to Mr. Bowen's trespass to personalty claim (Count I), this cause of action is governed by statute in Georgia, O.C.G.A. §§ 51-10-1 to 51-10-3, whereas Ohio recognizes a similar common law claim for trespass to chattels, *see Mercer v. Halmbacher*, 44 N.E.3d 1011, 1017 (Ohio Ct. App. 2015). Under these circumstances, Georgia's choice-of-law rules dictate application of Ohio law to avoid the extraterritorial application of Georgia statutes. *See Glock*, 247 F. Supp. 3d at 1318. The Complaint also alleges common law claims for negligence (Count III) and unjust enrichment (Count IV). Unlike Plaintiff's statutory trespass to personalty claim, these causes of actions arise under the common law in both Georgia and Ohio and, therefore, the Court should apply Georgia law. *See Lau's Corp. Inc., v. Haskins*, 405 S.E.2d 474 (Ga. 1991) (negligence); *Lyle v. PK Mgmt.*, *LLC*, 2010-Ohio-2161 ¶ 11 (Ct. App. 2010) (negligence); *Sitterli v. Csachi*, 811 S.E. 2d 454, 456 (Ga. Ct.

6

App. 2018) (unjust enrichment); *Cleveland Cent. Cath. High Sch. v. Mills*, 2018-Ohio 4873 ¶¶ 40–44 (Ct. App. 2018) (unjust enrichment).

## IV. THE COMPLAINT FAILS TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. Plaintiff Fails to State a Claim for Trespass to Personalty

The Complaint alleges that Plaintiff owned and operated his 2011 Porsche Panamera with an operative satellite radio receiver for eight years prior to receiving the May 2020 "Update" satellite transmission. Compl. ¶¶ 40-42. In search of a theory of liability, Plaintiff claims that after receiving satellite transmissions for nearly a decade, *this* alleged transmission was an unauthorized "trespass to personalty." Ohio follows the Restatement (Second) of Tort for trespass to personalty, otherwise known as "trespass to chattels." The Restatement (Second) of Torts § 217 defines trespass to chattels as "intentionally… dispossessing another of the chattel, or using or intermeddling with a chattel in the possession of another."[3] Accordingly, a defendant is liable for trespass to chattels where the defendant (1) intentionally (2) dispossess or intermeddles with the Plaintiff's personal property, (3) causing

---

[3] The Restatement (Second) of Torts § 218 further provides: "One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if, (a) he dispossesses the other of the chattel, or (b) the chattel is impaired as to its condition, quality, or value, or (c) the possessor is deprived of the use of the chattel for a substantial time, or (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest."

7

plaintiff bodily harm or harm to some person or thing in which plaintiff has a legally protected interest. *CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015, 1021–22 (S.D. Ohio 1997). Plaintiffs' trespass theory, however, fails to state a claim because the Complaint neither alleges that PCNA intentionally committed the alleged trespass nor that the alleged trespass was without consent.

### 1. The Complaint Does Not Allege that PCNA—as Opposed to SiriusXM—Intentionally Committed the Alleged Trespass

The Complaint alleges that the alleged trespassory act occurred as follows:

> Around Memorial Day 2020, Sirius provided promotional content to all owners of a Porsche vehicle equipped with a satellite radio antenna. In connection with the Memorial Day promotion, on information and belief, ***Porsche either transmitted, or facilitated Sirius's transmission of***, the Update to all eligible Porsche vehicles around May 21, 2020, regardless of whether the owner was a Sirius customer. The Update was transmitted to vehicles remotely and without advance notice to, or permission from, drivers.

Compl. ¶ 23 (emphasis added). The Complaint then repeats this speculative accusation in Paragraph 30, alleging: "Porsche knew or should have known that Sirius-related software updates could put its customers at similar risk, ***yet Porsche either itself transmitted, or facilitated Sirius's transmission of the updates to Porsche vehicles*** all the same and without taking appropriate steps to vet the Update." Compl. ¶ 30 (emphasis added); *see also id.* ¶ 3 ("[The Update] originated

either from Porsche itself or, from satellite radio provider SiriusXM Radio at Porsche's direction or with Porsche's facilitation…"); *id.* ¶ 63 (similar).

Plaintiff's trespass claim necessarily fails because the Complaint does not clearly allege that PCNA was the party who made physical contact with Plaintiff's personal property. Instead, Plaintiff alleges that while Sirius "provided promotional content to all owners of a Porsche vehicle equipped with a satellite radio antenna", PCNA may or may not have transmitted the "Update" and instead merely "facilitated Sirius's transmission of the [] Update." *Id.* ¶ 23. Plaintiff's speculative pleading is insufficient to state a claim for trespass to chattels under Ohio law. *Link v. US Bank Nat'l Ass'n*, No. 13CVH-07-7793, 2015 Ohio Misc. LEXIS 8553, at *11 (Ct. Com. Pl. Feb. 5, 2015) ("The Plaintiffs cannot rely on speculation as to whom - if anyone - trespassed on their chattels."); *see also Universal Tube & Rollform Equip. Corp. v. Youtube, Inc.*, 504 F. Supp. 2d 260, 269 (N.D. Ohio 2007) (dismissing trespass claim because plaintiff did not allege that defendant—as opposed to other internet patrons—made physical contact with website servers hosting plaintiff's website).

Nor does the Complaint allege the requisite intent to state a claim for trespass under Ohio law. Trespass is an intentional tort, yet the Complaint fails to allege that PCNA intended to trespass. *See MCI Worldcom Network Servs. Inc., v. W. M. Brode Co.*, 411 F. Supp. 2d 804, 810 (N.D. Ohio 2006) ("Since MCI has produced no

evidence that Brode intended the physical contact with the cables, no trespass claim may lie."). And to the extent that Plaintiff seeks to hold PCNA liable for the Update transmitted by SirusXM, the Complaint similarly fails to include allegations sufficient to establish the necessary intent required state a claim against PCNA.

In *Universal Tube*, the court acknowledged that a defendant could be liable for a third party's trespass, but only where the defendant uses "duress or fraud" to cause the third party to commit the trespass. The Complaint contains no allegation that PCNA coerced SiriusXM to commit the alleged trespass. To the contrary, the Complaint alleges that the "Update" was transmitted in connection with the Memorial Day promotion "provided" by SiriusXM; indeed, the only entity who is definitively alleged to have transmitted content to Plaintiff's vehicle is SiriusXM. *See* Compl. ¶ 23. Plaintiff does not elaborate on his allegation that PCNA "facilitated" SiriusXM's transmission of the "Update" but, at best, Plaintiff is alleging that PCNA was a third party to the alleged trespass—which is insufficient under Ohio law absent allegations that PCNA used duress or fraud to induce SiriusXM to transmit the Update.

Accordingly, Plaintiff's failure to allege intentional contact or intermeddling by PCNA is fatal to his trespass to chattels to claim.

## 2.    *Plaintiff Consented to the Alleged Trespass*

To constitute a trespass, a use of personal property must exceed the consent granted by property owner. *CompuServe*, 962 F. Supp. at 1024. As the owner of a satellite radio receiver, Plaintiff consented to the receipt of satellite radio transmissions—just as the owner of a conventional, terrestrial radio consents to the receipt of terrestrial radio signals when they turn on their AM/FM radio. The Complaint does not allege that the purported "trespass" by satellite radio transmission was without authority and, accordingly, the Complaint fails to state a claim for trespass to chattels under Ohio law.

The *CompuServe* case is instructive. There, plaintiff CompuServe alleged that defendant had committed a trespass by sending unsolicited spam emails to CompuServe users. 962 F. Supp. at 1023-1024. The court found that "there is at least a tacit invitation for anyone on the Internet to utilize plaintiff's computer equipment to send e-mail to its subscribers." *Id.* Accordingly, "[t]o prove that a would-be trespasser acted with the intent required to support liability in tort it is crucial that defendant be placed on notice that he is trespassing." *Id.*[4] These holdings are

---

[4] The court ultimately held that CompuServe had established a trespass because it explicitly informed defendant that it was "prohibited from using CompuServe's equipment to send his junk e-mail messages" and publicly posted on the Internet CompuServe's policy statement prohibiting unsolicited emails, but defendant nonetheless continued to send unsolicited emails to CompuServe users.

11

consistent with conventional trespass law in Ohio, where a party who was once invited to a location becomes a trespasser only once the owner of the property gives express restriction or limitation on that party's presence or use. *See, e.g., Allstate Ins. Co. v. U.S. Assocs. Realty, Inc.*, 464 N.E.2d 169 (Ohio Ct. App. 1983). They are also consistent with decisions by courts in other jurisdictions that have dismissed claims for digital trespass where the complaint failed to properly allege a lack of consent to the alleged digital trespass. *See e.g. Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 123 (N.D. Cal. 2020) ("courts consistently hold that in the context of a software update and digital trespass, '[v]oluntary installation runs counter to the notion that the alleged act was a trespass.'" (citations omitted)).

Here, Plaintiff alleges that his vehicle contains a SiriusXM satellite radio antenna/receiver and that his satellite radio system was operational and receiving transmissions as of May 21, 2020—the day of the alleged "Update." Compl. ¶¶ 41, 43. While Plaintiff alleges that he "never consented to receiving the Update and thus suffered an unauthorized invasion into his PCM…" (*id.* ¶ 44), he admits that he has owned his vehicle containing an operational satellite radio receiver since 2012 (*id.* ¶ 40-41).[5]  The Complaint does ***not*** allege that Plaintiff ever disconnected or disabled

---

[5] Similarly, Plaintiff's legal conclusions that Defendant's conduct was "without authorization" under his Computer Fraud and Abuse Act claim or that the alleged

his satellite radio receiver nor does the Complaint allege that Plaintiff ever requested to opt-out of receiving satellite transmissions. On the contrary, the Complaint alleges that "[a]though Plaintiff is not a Sirius customer" his satellite receiver was operational and accepting transmissions as of May 21, 2020. *Id.* ¶ 42. Additionally, the Complaint alleges that not until ***after*** the alleged "Update" event in May 2020 did "Porsche owners demand[] that Porsche and Sirius stop transmitting to their vehicles." *Id*. ¶ 38. There is no allegation that Plaintiff made a similar request prior to May 2020, nor is there any allegation that any customers requested not to receive transmissions prior to the alleged "Update."

Plaintiff does not allege that there was any limitation or restriction placed on SiriusXM's (or PCNA's) authority to transmit signals or updates to Plaintiff's satellite receiver. By the allegations of the Complaint, it appears that Plaintiff freely accepted transmissions to his satellite receiver over the eight years he owned the vehicle prior to the alleged "Update." Like in the internet email context in *CompuServe*, there is a tacit invitation to receive satellite transmissions when you

---

transmission to his vehicle was "without permission" (Compl. ¶ 3) are bald assertions that are not entitled to a presumption of truth without further support. *See, e.g., Hartman v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (holding that a court need not accept as true "allegations that are merely conclusory").

operate a satellite radio receiver, as Plaintiff alleges he did. And while the court in *CompuServe* ultimately found the defendant's conduct exceeded the explicit limitations on use noticed by plaintiff, the only notice or limitation alleged by Plaintiff in the Complaint was provided *after* the alleged trespass occurred; there is no allegation that PCNA continued to trespass after that notice was provided. Accordingly, the Complaint fails to allege the necessary intent by PCNA to state a trespass to chattels claim under Ohio law.

### B.    Plaintiff Fails to State a Claim under the Computer Fraud and Abuse Act (18 U.S.C. § 1030)

Mr. Bowen's claim under the Computer Fraud and Abuse Act ("CFAA") falls with his trespass claim. Mr. Bowen appears to believe that if an automobile manufacturer or satellite radio provider sends a satellite radio signal to a car outfitted with a satellite radio receiver it commits a crime. According to him, that conduct amounts to unlawful "access" to a car's entertainment system "without authorization" if the system receives free satellite radio content. Plaintiff is wrong. By purchasing a car with a satellite radio receiver, a buyer accepts—indeed consents to—the type of access Mr. Bowen alleges.  As a result, Mr. Bowen has not alleged that PCNA accessed his PCM without authorization. And even if he could somehow clear those hurdles, his CFAA claim would still fail because there are no non-conclusory allegations that the alleged damages meet CFAA's $5,000 requirement.

14

### 1.      *Plaintiff Consented to Receiving Satellite Radio Transmissions*

Plaintiff's CFAA claim is based on violations of § 1030(a)(5)(B) and/or (C). Compl. ¶¶ 69-70. Plaintiff's claim under either section fails because he does not clearly allege ***intentional*** access by ***PCNA*** as required by these sections.[6] *See supra* Section IV.A.1. In any event, to state a claim under either of these sections, Mr. Bowen must also allege that PCNA was not authorized to access his PCM in the manner alleged—by sending satellite radio signals to his PCM. But by purchasing a vehicle equipped with a SiriusXM radio receiver, Plaintiff consented to just the sort of access he now contends was "unauthorized." Federal courts in other circuits have dismissed CFAA claims on similar facts. In litigation stemming from the purportedly deleterious effects of iPhone updates and application downloads, for example, courts have held time and again that CFAA claims premised on unauthorized access fail where the party consented to the allegedly damaging download. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1066 (N.D. Cal. 2012); *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 452 (N.D. Cal. 2018) ("[U]sers

---

[6] These sections provide that it is a violation of the CFAA to "(B) ***intentionally*** access[] a protected computer without authorization, and as a result of such conduct, recklessly cause[] damage; or (C) ***intentionally*** access[] a protected computer without authorization, and as a result of such conduct, cause[] damage." 18 USC § 1030(5).

who voluntarily installed software would have serious difficulty pleading unauthorized access under the CFAA.") (citations and quotations omitted); *see also In re AOL, Inc. Version 5.0 Software Litig.*, 168 F. Supp. 2d 1359, 1370 (S.D. Fla. 2001) (CFAA claim dismissed where plaintiffs consented to access by downloading application).

In *In re iPhone Application*, plaintiffs alleged Apple violated the CFAA by collecting certain personal data from plaintiffs without their authorization after they downloaded applications to their iPhones. *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1065–65. Though plaintiffs chose to download the offending applications, they nevertheless argued that they did not consent to continuous geolocation monitoring while using the applications. *Id.* at 1065. The court dismissed plaintiffs' unauthorized access claim:

> Although Apple arguably exceeded its authority when it continued to collect geolocation data from Plaintiffs after Plaintiffs had switched the Location Services setting to 'off,' Plaintiffs are not asserting an 'exceeds authorized access' claim against Apple. Instead, Apple had authority to access the iDevice and to collect geolocation data as a result of the voluntary installation of the software.

*See id.* at 1066.[7]

---

[7] Like plaintiffs in *iPhone Application*, Mr. Bowen's allegation about a satellite radio signal carrying an unauthorized update is a claim for accessing a computer without authorization, not for exceeding authorization. *See In re AOL, Inc. Version 5.0*

This case is on all fours. Plaintiff alleges that PCNA or SiriusXM (with PCNA's assistance) accessed his PCM by sending a remote satellite radio signal carrying a SiriusXM-related "Update." Compl ¶ 3. That signal was unauthorized, according to Mr. Bowen, because he is not a SiriusXM subscriber and because he did not agree to receive the Update. *Id*. ¶¶ 3, 23, 44. Just as the plaintiffs in *iPhone Application* consented to Apple accessing their devices by downloading applications that gave Apple access, Mr. Bowen consented to receiving satellite radio signals by purchasing a vehicle with a SiriusXM receiver, by allowing access for over eight years, and by failing to remove or disable the SiriusXM antenna from his vehicle or otherwise opt-out of any future SiriusXM content. Even if he did not consent to the alleged "Update", that does not change that he consented to PCNA's accessing his PCM in the manner he now claims was unauthorized.[8]

Courts in this Circuit apply a narrow, insider-versus-outsider standard of "without authorization." *See Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d

---

*Software Litig.*, 168 F. Supp. 2d at 1370 (distinguishing between a CFAA claim for exceeding the right to access a computer from a claim for accessing a computer without authorization). Mr. Bowen has not—and cannot—allege an "exceeds authorization" claim against PCNA because that requires alleging that PCNA obtained information from his PCM. *See* 18 U.S.C. §§ 1030(a)(2) & (4).

[8] Mr. Bowen's allegation that he is not a SiriusXM subscriber does not change the analysis because he alleges that it was *free* content that triggered his PCM to reboot continuously, not premium content. Compl. ¶ 23.

1322, 1342 (N.D. Ga. 2007) (accepting the "less expansive view" that "'without authorization' generally only reaches conduct by outsiders who do not have permission to access the plaintiff['s] computer in the first place."). Under that standard, a defendant accesses a computer without authorization only if it is not allowed to access the computer at all. *Id*. Mr. Bowen does not allege that PCNA or SiriusXM were not permitted to send ***any*** satellite radio signals to his PCM—indeed, the purpose of a satellite radio receiver is to receive satellite radio signals. Accordingly, Plaintiff's CFAA claim should be dismissed. *See, e.g., Philips Med. Sys. Neth. B.V. v. TEC Holdings, Inc.*, Civil Action No. 1:17-CV-02864, 2018 U.S. Dist. LEXIS 225725, *12 (N.D. Ga. Mar. 14, 2018) (dismissing CFAA claim because plaintiff failed to allege that defendants were without authorization to access and service medical imaging machines); *Keen v. Bovie Med. Corp.*, Case No. 8:12-cv-305-T-24-EAJ, 2013 U.S. Dist. LEXIS 64999, *35 (M.D. Fla. May 7, 2013) (dismissing employers' CFAA claim because the employee was authorized to access the employer's computer); *Mortg. Now, Inc. v. Stone*, Case No. 3:09cv80/MCR/MD, 2010 U.S. Dist. LEXIS 152776, at *16 (N.D. Fla. Sep. 29, 2010) (same).

### 2. *Plaintiff Fails to Allege Sufficient Damages to Assert a CFAA Claim*

To assert a CFAA claim, Plaintiff must allege facts sufficient to show that PCNA's actions caused at least $5,000 in economic damage. 18 U.S.C. §§ 1030 (g)

& c(4)(A)(i)(I)-(V). Besides the receipt for $3,270.78 for his replacement PCM that is attached to his complaint, Mr. Bowen asserts only conclusory allegations about other damage PCNA allegedly caused him or absent class members in an attempt to reach the damage threshold. Compl. ¶ 47. He claims that the time it took for him to facilitate the PCM repairs (conveniently) cost him $2,000, but he alleges no facts that plausibly support the allegation. *Id*. ¶ 48. This threadbare assertion of damages clearly designed to meet the statutory damages threshold is not sufficient under Rule 8. *See Iqbal*, 556 U.S. at 678.

Even were this Court inclined to aggregate Mr. Bowen's claims with those of the putative class he seeks to represent,[9] his allegations are insufficient. Plaintiff claims that certain class members had to replace batteries and PCMs and that the average cost to replace each is $600 and $2,000–$4,000, respectively. Compl. ¶¶ 27, 32. But he doesn't allege ***any*** facts to support his suggestion that numerous vehicle owners and lessees have borne these costs. In fact, Mr. Bowen admits that resetting the PCM—which can be done by the vehicle owner at no cost at all—often remedied

---

[9] While some courts do permit class members' damages to be considered in reaching the $5,000 threshold, others do not. *See Thurmond v. Compaq Comput. Corp.*, 171 F. Supp. 2d 667, 680 (E.D. Tex. 2001) (explaining that such aggregation "wrongfully assumes the existence of a certified class" and contravenes "the plain language of section 1030(a)(5)(A) [which] requires 'damage' to "***a*** protected computer.'").

the alleged issues. *Id.* ¶ 35. For example, the website cited by Plaintiff (*Id.* ¶ 35, n.12) explains that this issue can typically be resolved without any need to bring the vehicle into a dealer:

> It was brought to our attention, that the Porsche Communication Management or PCM keeps rebooting on a number of vehicles at the moment. If you are experiencing issues, you can perform a hard reset on the PCM in your vehicle and it should resolve the issue. Please be aware that hard resetting the PCM will remove all personalized settings. In order to perform a PCM hard reset:
>
> - Press and hold the PCM Info button for approximately 10 seconds until the PCM reboots.
>
> - Immediately select the following from the PCM CAR > OPTION > Set PCM System > Reset PCM > Vehicle Handover > Yes > Yes
>
> These instructions can be found in the respective Owner's Manuals for affected vehicles.

Absent allegations of how many class members were unable to resolve their rebooting issue through this simple, free process, Plaintiffs' conclusory allegations are not sufficient to satisfy the damages threshold. *See Iqbal*, 556 U.S. at 678.

### C.    Plaintiff Fails to State a Negligence Claim

Plaintiff's common law negligence claim (Count III) cites no distinct statutory, common law or contractual duty owed to Plaintiff by PCNA. In fact, the Complaint fails to allege any kind of relationship between Plaintiff and PCNA and affirmatively denies any relationship between Plaintiff and alleged trespasser

SiriusXM. Because Plaintiff fails to allege a cognizable duty owed to him by PCNA, the Complaint necessarily fails to state a claim for negligence.

To state a claim for negligence, Plaintiff must allege "(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." *Carmichael v. Kellogg, Brown & Root Servs. Inc.*, 572 F.3d 1271, 1288 (11th Cir. 2009) (analyzing Georgia law). Duty is a threshold issue in any cause of action for negligence. *Rome v. Jordan*, 426 S.E.2d 861 (Ga. 1993). "Before negligence can be predicated upon a given act, some duty to the individual complaining must be sought and found, the observance of which duty would have averted or avoided the injury or damage." *Douglasville v. Queen*, 514 S.E.2d 195, 198 (Ga. 1999); *see also Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686, 688 (Ga. 2013) ("underlying an actionable claim of negligence is the existence of a legal duty"). Such a duty can arise either by statute or be imposed by a common law principle recognized in the case law. *Id.*

The Complaint does not allege any statutory duty that has been violated by PCNA.[10] Nor does the Complaint allege that PCNA breached a duty owed to Plaintiff through a contract, either express or implied. Instead, Plaintiff appears to allege that PCNA owed Plaintiff a duty under the common law, specifically a duty to refrain from committing trespass to chattels or personalty. Compl. ¶ 76 ("Defendant owed a duty to refrain from depriving or interfering with possession of, or otherwise causing damage to, Plaintiff's and Class members' personal property and chattel."). Accordingly, Plaintiff's negligence cause of action under Count III appears entirely tied to his trespass claim under Count I. Because Plaintiff's allegation of duty relies its claim for trespass and that claim fails as explained *supra* Section IV.A., his negligence claim predicated on his trespass claim also necessarily fails. *See e.g. Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d at 687 (holding that plaintiff failed to state a viable negligence claim because the alleged breach of duty was tied to a statutory claim which did not impose any legal duty on the defendant).

Moreover, Plaintiff fails to allege any kind of relationship with PCNA that would give rise to a duty owed to Mr. Bowen. There is no allegation in the Complaint

---

[10] While not cited under Count III, to the extent that Plaintiff claims that PCNA had a duty under the CFAA, Plaintiff has failed to state a claim under the CFAA as outlined in Section IV.B. above, and thus the CFAA cannot form the basis of the alleged duty.

that Mr. Bowen purchased his used vehicle from PCNA or even from an authorized Porsche dealer. Further, Plaintiff readily admits that he had no relationship with SiriusXM. Compl. ¶¶ 3, 42, 77. To the extent that the Complaint alleges that it was SiriusXM, and not PCNA, that transmitted the alleged Update (*e.g.* Compl. ¶ 23), Plaintiff has not alleged that PCNA had a duty to control the conduct of SiriusXM. *See Houston v. Bedgood*, 588 S.E. 2d 437, 440 (Ga. Ct. App. 2003) ("Generally, there also is no duty to control the conduct of third persons to prevent them from causing . . . harm to others . . . [unless] a special relationship exists between the actor and another imposing a duty on the actor to control such person's conduct for the benefit of third persons, or a special relationship exists between the actor and another giving such person a right to protection.").

The Complaint also alleges a vague "failure to warn." *See* Compl. ¶ 77(a) ("failing to notify and/or warn Plaintiff and Class members of the potential risk of harm that the Update posed to their vehicles and PCMs…"). Under Georgia law, the duty to warn arises where a manufacturer knows or reasonably should know of the danger arising from the use of its product. *Chrysler Corp. v. Batten*, 450 S.E. 2d 208, 211 (Ga. 1994). But the Complaint does not allege that the Update made his vehicle

a "dangerous" product,[11] that PCNA was the manufacturer of the alleged Update, or that PCNA knew or reasonably should have known about any alleged danger associated with the alleged Update. Plaintiff's boilerplate recitation of a "failure to warn" fails to state any cognizable legal duty under Georgia law.

Plaintiff does not sufficiently allege any duty owed by PCNA to Plaintiff, and his negligence claim should be dismissed.

### D.    Plaintiff Fails to State an Unjust Enrichment Claim

Mr. Bowen asserts an unjust enrichment claim, but he does not allege facts supporting that claim. To state a claim for unjust enrichment, Plaintiff must allege that (1) PCNA induced or encouraged Mr. Bowen to provide something of value to PCNA; (2) Mr. Bowen provided a benefit to PCNA with the expectation that PCNA would be responsible for the cost thereof; and (3) PCNA knew of the benefit being bestowed upon it by Plaintiff and either affirmatively chose to accept the benefit or failed to reject it. *Campbell v. Ailion*, 790 S.E.2d 68, 73 (Ga. Ct. App. 2016). But there are no factual allegations to support any of these elements.

In fact, his allegations show just the opposite. There are no allegations that Mr. Bowen provided any benefit to PCNA. He does not allege that he purchased his

---

[11] Plaintiff's allegation that the Update resulted in "irritating and potentially dangerous 'static' noise" (Compl. ¶ 27) does not plausibly suggest that the alleged rebooting issue made his vehicle unsafe or dangerous to drive.

vehicle from PCNA; rather he alleges that he purchased his vehicle used from an unidentified seller. Compl. ¶ 40. He does not allege that he paid PCNA to repair his vehicle; rather he alleges that he paid Byers Imports to service his PCM. *Id.* ¶¶ 40, 83. Mr. Bowen doesn't explain how any alleged benefit flowed to PCNA, but even if he did, his claim would still fail because he received what he bargained for—a fully functioning vehicle. *Speedway Motorsports, Inc. v. Pinnacle Bank*, 727 S.E.2d 151, 155 (Ga. Ct. App. 2012) (dismissing unjust enrichment claim where plaintiff allegedly received loan money from defendant and defendant received payments it was entitled to under the loan agreement.). Even if Mr. Bowen conveyed some non-existent benefit, and even if it flowed to PCNA, and even if Mr. Bowen expected compensation for the non-existent benefit, there are no allegations that PCNA ever knew it received anything from him. *Campbell*, 790 S.E.2d. at 74. Plaintiff's unjust enrichment claim should be dismissed.

## V.    CONCLUSION

Plaintiff has failed to state any claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Accordingly, PCNA's Motion to Dismiss should be GRANTED.

Respectfully submitted this 24th day of February 2021,

> */s/ Cari K. Dawson*
> CARI K. DAWSON
> Georgia Bar Number 213490
> KARA F. KENNEDY
> Georgia Bar Number 926006
> MATTHEW D. LAWSON
> Georgia Bar Number 744343
> ANDERSON S. B. KEMP
> Georgia Bar Number 404997
> **ALSTON & BIRD LLP**
> 1201 West Peachtree Street Atlanta, Georgia
> 30309-3424
> Telephone: 404-881-7000
> Facsimile: 404-881-7777
> cari.dawson@alston.com
> kara.kennedy@alston.com
> matt.lawson@alston.com
> anderson.kemp@alston.com
>
> *Attorneys for Defendant Porsche Cars North
> America, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH LR 5.1</u>

I certify that the foregoing document is written in 14-point Times New Roman

font in accordance with Local Rule 5.1.

> */s/ Cari K. Dawson*
> Cari K. Dawson