# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

KENT BOWEN, individually and on
behalf of others similarly situated,

      Plaintiff,

v.

PORSCHE CARS N.A., INC.,

      Defendant.

Case No. 1:21-CV-00471-MHC

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS

Matthew R. Wilson (*pro hac vice*)
mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice*)
mboyle@meyerwilson.com
MEYER WILSON CO., LPA
305 West Nationwide Boulevard
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

David Stein (*pro hac vice*)
Alexander Bukac (*pro hac vice*)
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ds@classlawgroup.com
ajb@classlawgroup.com

Michael A. Caplan
Georgia Bar No. 601039
T. Brandon Waddell
Georgia Bar No. 252639
CAPLAN COBB LLP
75 Fourteenth Street, NE, Suite 2750
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
bwaddell@caplancobb.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................. 1

STATEMENT OF FACTS .................................................................................. 1

I.   Porsche sells vehicles equipped with infotainment
     systems (or "PCMs"). ............................................................................... 1

II.  Porsche updates the software for Plaintiff's and
     class members' PCMs. .............................................................................. 2

III. Porsche's update causes permanent damage to the
     PCMs, but Porsche refuses to take responsibility. ...................................... 2

IV.  Plaintiff has experienced the same problems as
     other class members. ............................................................................... 3

ARGUMENT ................................................................................................... 4

I.   Plaintiff has stated a valid claim under the CFAA. ...................................... 4

     A.   Porsche intentionally accessed Plaintiff's PCM,
          whether directly or indirectly. ............................................................ 4

     B.   Porsche received no authorization to send the update. ........................... 6

          1.   Plaintiff never provided Porsche with permission
               to access his PCM. ...................................................................... 7

          2.   Even if Plaintiff's use of the radio antenna implied
               consent to receive radio signals, Porsche did not have
               authorization to modify the software in Plaintiff's vehicle. ............. 8

     C.   Porsche caused over $5,000 in losses. .................................................. 10

II.  Plaintiff states a claim for trespass to personalty. ..................................... 11

A.    Plaintiff's trespass claim is controlled by
      Georgia law...................................................................................11

B.    Under Georgia law, Porsche is liable for
      trespass to personalty................................................................... 16

C.    In the alternative, Plaintiff states a valid
      trespass to chattels claim under Ohio law. ............................... 19

III.  Plaintiff has stated a viable negligence claim
      under Georgia law......................................................................... 20

IV.   Plaintiff stated a viable unjust enrichment claim. ....................................... 23

CONCLUSION...................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Agilysys, Inc. v. Hall*,
258 F. Supp. 3d 1331 (N.D. Ga. 2017) ................................................. 7

*Ala. Midland Ry. Co. v. Guilford*,
46 S.E. 655 (Ga. 1904) ...................................................................... 15

*Allstate Ins. Co. v. Sutton*,
658 S.E.2d 909 (Ga. App. 2008) ........................................................ 21

*Amin v. Mercedes-Benz USA, LLC*,
349 F. Supp. 3d 1338 (N.D. Ga. 2018) ............................................... 25

*Ault v. Meager*,
37 S.E. 185 (Ga. 1900) ...................................................................... 15

*Bolinger v. First Multiple Listing Serv.*,
838 F. Supp. 2d 1340 (N.D. Ga. 2012) ............................................... 24

*Brown Jordan Int'l, Inc. v. Carmicle*,
846 F.3d 1167 (11th Cir. 2017) .......................................................... 11

*Caldwell v. Church*,
802 S.E.2d 835 (Ga. App. 2017) ........................................................ 17

*CDM Constructors v. Randall Mech. Inc.*,
No. 1:19-cv-1178-MHC, 2019 WL 7819488 (N.D. Ga. Oct. 21, 2019) ............ 23

*CompuServe Inc. v. Cyber Promotions, Inc.*,
962 F. Supp. 1015 (S.D. Ohio 1997) ........................................... 19, 20

*Coon v. Med. Ctr.*,
797 S.E.2d 828 (Ga. 2017) ........................................................... 12, 15

iii

*Dunigan v. Countrywide Home Loans, Inc.*,
  No. 1:08-cv-3735-CC, 2009 WL 10698799 (N.D. Ga. Sept. 10, 2009) ............. 22

*Encompass Indem. Co. v. Ascend Techs., Inc.*,
  No. 1:13-cv-02668-SCJ, 2015 WL 10582168 (N.D. Ga. Sept. 29, 2015) .......... 21

*Energy Sys. Grp., LLC v. Ware, Inc.*,
  No. 1:14-CV-03049-ELR, 2016 WL 7888028 (N.D. Ga. June 28, 2016) ........... 21

*FDIC v. Loudermilk*,
  761 S.E.2d 332 (Ga. 2014) ............................................................................... 14

*Fla. Atl. Univ. Bd. of Trs. v. Parsont*,
  465 F. Supp. 3d 1279 (S.D. Fla. 2020) .............................................................. 5

*Frank Briscoe Co. v. Ga. Sprinkler Co.*,
  713 F.2d 1500 (11th Cir. 1983) ........................................................................ 13

*Glock v. Glock*,
  247 F. Supp. 3d 1307 (N.D. Ga. 2017),
  *aff'd*, 714 F. App'x 987 (11th Cir. 2018) ......................................................... 13

*Health First, Inc. v. Hynes*,
  No. 6:11-cv-715, 2014 WL 12648552 (M.D. Fla. Sept. 17, 2014) ...................... 5

*In re Am. Online, Inc.*,
  168 F. Supp. 2d 1359 (S.D. Fla. 2001) ......................................................... 7, 10

*In re Apple Inc. Device Performance Litig.*,
  347 F. Supp. 3d 434 (N.D. Cal. 2018) ............................................................... 7

*In re iPhone App. Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................. 7

*In re Tri-State Crematory Litig.*,
  215 F.R.D. 660 (N.D. Ga. 2003) ...................................................................... 13

*Jedson Eng'g v. Spirit Constr. Servs.*,
  720 F. Supp. 2d 904 (S.D. Ohio 2010) ............................................................. 20

*Kirkpatrick v. J.C. Bradford & Co.*,
827 F.2d 718 (11th Cir. 1987) .......................................................................... 12

*Levenson v. Word*,
668 S.E.2d 763 (Ga. App. 2008),
*aff'd*, 686 S.E.2d 236 (Ga. 2009) ............................................................... 11, 15

*Lockheed Martin Corp. v. L-3 Commc'ns Corp.*,
No. 6:05-cv-1580-Orl-31KRS, 2007 WL 569994 (M.D. Fla. Feb. 20, 2007) ...... 9

*Mangham v. Reed,*
11 Ga. 137 (1852) .......................................................................................... 14

*MCI Worldcom Net. Servs. v. Von Behren Elec., Inc.*,
No. 1:00-cv-3311-JTC, 2002 WL 32166535 (N.D. Ga. May 21, 2002) ....... 17, 18

*Md. Cas. Ins. Co. v. Welchel*,
356 S.E.2d 877 (1987) ............................................................................... 17, 19

*Mercer v. Halmbacher*,
44 N.E.3d 1011 (Ohio Ct. App. 2015) ............................................................. 19

*Miller v. Wilson*,
25 S.E. 578 (Ga. 1896) ................................................................................... 19

*Monroe v. Guess*,
154 S.E. 301 (Ga. App. 1930) ........................................................................ 21

*Mr. Transmission, Inc. v. Thompson*,
328 S.E.2d 397 (Ga. App. 1985) ..................................................................... 17

*Pierce v. Clayton Cnty., Ga.*,
717 F. App'x 866 (11th Cir. 2017) .................................................................. 15

*Plantation at Bay Creek Homeowners Ass'n, Inc. v. Glasier*,
825 S.E.2d 542 (Ga. App. 2019) ..................................................................... 18

*SEC v. Price*,
No. 1:12-cv-2296-TCB, 2015 WL 11198937 (N.D. Ga. Mar. 31, 2015) ...... 12, 16

*Shorewood Pack'g Corp. v. Commercial Union Ins. Co.*,
    865 F. Supp. 1577 (N.D. Ga. 1994) ............................................................. 12, 13

*Smith Serv. Oil Co. v. Parker*,
    549 S.E.2d 485 (Ga. App. 2001) ......................................................... 23

*Speedway Motorsports, Inc. v. Pinnacle Bank*,
    727 S.E.2d 151 (Ga. App. 2012) ......................................................... 25

*Tacon v. Equity One, Inc.*,
    633 S.E.2d 599 (Ga. App. 2006) ......................................................... 16

*Terrill v. Electrolux Home Prods.*,
    753 F. Supp. 2d 1272 (S.D. Ga. 2010) ............................................... 24

*Teva Pharm. USA v. Sandhu*,
    291 F. Supp. 3d 659 (E.D. Pa. 2018) ................................................... 6

*Tracfone Wireless v. Simply Wireless*,
    229 F. Supp. 3d 1284 (S.D. Fla. 2017) ................................................ 6

*Trusted Data Sols., LLC v. Kotchen & Low, LLP*,
    No. 1:14-cv-1419-TCB, 2015 WL 11251959 (N.D. Ga. Feb. 6, 2015) ............. 13

*Unger v. Bryant Equip. Sales & Servs., Inc.*,
    335 S.E.2d 109 (Ga. 1985) ................................................................ 21

*United States v. Morris*,
    928 F.2d 504 (2d Cir. 1991) ........................................................... 8, 9

*United States v. Phillips*,
    477 F.3d 215 (5th Cir. 2007) ....................................................... 7, 8, 9

*United States v. Thomas*,
    877 F.3d 591 (5th Cir. 2017) ............................................................. 8

*Wells Fargo Bank, N.A. v. Jenkins*,
    744 S.E.2d 686 (Ga. 2013) ............................................................... 22

**Statutes**

18 U.S.C. § 1030(c)(4)(A)(i)(I) ................................................................ 4, 10

18 U.S.C. § 1030(a)(5) ......................................................................... 4, 7

18 U.S.C. § 1030(a)(5)(B) ......................................................................... 4

18 U.S.C. § 1030(a)(5)(C) ......................................................................... 4

18 U.S.C. § 1030(g) ............................................................................ 10

O.C.G.A. § 51-10-1 .......................................................................... 15, 16

O.C.G.A. § 51-10-3 .......................................................................... 16, 22

O.C.G.A. § 51-9-1 ............................................................................... 22

**Rules**

Fed. R. Civ. P. 8(d)(2) ........................................................................... 18

## INTRODUCTION

Porsche's motion to dismiss boils down to a simple premise: Porsche believes it can send a software update causing thousands of dollars in damage to vehicles across the country and yet be immune to liability for those damages. Porsche is wrong.

Because both federal and state law provide redress under these circumstances, Plaintiff asks that the Court deny Porsche's motion in full.

## STATEMENT OF FACTS

### I.      Porsche sells vehicles equipped with infotainment systems (or "PCMs").

Porsche sells vehicles with a PCM—a proprietary "Porsche Communications Management" system—that functions as the central control for adjusting the radio, making calls, and using GPS navigation. Dkt. 1 ¶¶ 1, 12-13, 18, 19.[1] A PCM can be found in the Panamera, Cayenne, 911 Macan, Cayman, and Boxster models, years 2010 to present. *Id*. ¶¶ 24, 25.

The PCM can access Sirius XM, a subscription-based satellite radio service. *Id*. ¶¶ 12, 15. Under Porsche's longstanding arrangement with Sirius XM, Porsche facilitates distribution of Sirius products—including hardware and software—in its

---

[1]   Plaintiff uses the pagination assigned by this Court's CM/ECF system.

vehicles. *Id.* ¶ 16. Porsche profits from doing so and increases the sales price of its vehicles by providing free trial subscriptions. *Id*. ¶ 17.

## II.    Porsche updates the software for Plaintiff's and class members' PCMs.

As the manufacturer, Porsche maintains the technical ability to update its vehicles and their components after the vehicles are first sold, and Porsche sometimes executes these updates remotely. *Id.* ¶ 22. Around Memorial Day 2020, Sirius XM offered a promotion of free satellite radio services to Porsche owners. In connection with this promotion, Porsche (or Sirius with Porsche's help) remotely pushed a digital software update to the Porsche models equipped with a PCM version 3.0 or 3.1. *Id.* ¶¶ 3, 23.

Porsche did not ask permission before sending the update, nor did it notify drivers beforehand. *Id*. ¶ 23.

## III.    Porsche's update causes permanent damage to the PCMs, but Porsche refuses to take responsibility.

The update immediately caused widespread malfunctioning of PCMs in vehicles across the country. *Id.* ¶¶ 25, 27, 31. Upon receiving the update, the PCMs entered a constant reboot cycle, restarting every few minutes, whether the vehicle was running or not, draining the vehicle's battery, damaging the PCM hard drive, and emitting a loud static sound. *See, e.g.*, *id*. ¶ 27. Drivers began complaining immediately. *See id*. ¶ 31; *see also id.* ¶¶ 25, 27.

In response to complaints, Porsche informed its dealers that the update had caused the problems, and acknowledged the update affected virtually all Porsche vehicles. *Id*. ¶¶ 34–36. Porsche's only recommended solution, however, did not resolve the problems. *Id.* ¶ 35, 38. And even though it had been responsible for sending (or helping Sirius send) the update that caused all this damage, Porsche has refused to take responsibility. With Porsche refusing to provide free repairs at its dealerships, vehicle owners are left to bear the costs of replacing the PCM (between $2,000 and $4,000). *Id.* ¶¶ 32–34.

## IV.    Plaintiff has experienced the same problems as other class members.

Plaintiff Kent Bowen bought a used 2011 Porsche Panamera equipped with a PCM. *Id.* ¶¶ 14, 41. Mr. Bowen, who bought his Porsche from its previous owner, never subscribed to or used Sirius XM's service, and had never agreed that Porsche or Sirius could remotely modify his vehicle. Yet he still received the update, and he received it without any advance notification. *Id.* ¶¶ 42, 44.

Like other Porsche owners' PCMs, Mr. Bowen's entered a continuous reboot cycle, preventing him from using any PCM features and degrading his car battery. *Id.* ¶ 44. Plaintiff's local Porsche dealership told him his PCM's hard drive had been irreparably damaged and that the entire PCM needed to be replaced. *Id.* ¶ 45.

As a result, Mr. Bowen paid $3,270.78 to replace the PCM, devoted up to 10 hours of time attending to its diagnosis and replacement, and was without use of his vehicle for months. *Id.* ¶¶ 46, 47, 48. Porsche never offered to perform the repair for free and has not offered to reimburse Plaintiff. *Id.* ¶ 47. As a result, Plaintiff brought suit, seeking to force Porsche to do right not only for him, but also for all other vehicle owners who were similarly impacted by the update.

## ARGUMENT

### I.     Plaintiff has stated a valid claim under the CFAA.

Plaintiff's complaint states a claim under the CFAA, which prohibits: (1) intentionally accessing a protected computer; (2) without authorization; and (3) either recklessly causing damage, or causing damage and loss without respect to mental state. *See* 18 U.S.C. § 1030(a)(5)(B), (C). The statute provides a private right of action for violations that caused "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." *Id.* at § 1030(c)(4)(A)(i)(I). Because Porsche sent the update without authorization, causing losses over $5,000, the claim should be sustained.

### A.     Porsche intentionally accessed Plaintiff's PCM, whether directly or indirectly.

The "intentionally accessed" element of a CFAA claim is not a high bar to clear: "all the statute requires" is that the defendant "directed" the intrusion. *Fla. Atl.*

*Univ. Bd. of Trs. v. Parsont*, 465 F. Supp. 3d 1279, 1291 (S.D. Fla. 2020). The test is satisfied if, for example, the defendant "intentionally pushed various buttons" that caused the intrusion, as this rises above "mistaken, inadvertent or careless conduct." *Health First, Inc. v. Hynes*, No. 6:11-cv-715, 2014 WL 12648552, at *10 (M.D. Fla. Sept. 17, 2014) (internal quotation marks omitted).

In this case, Plaintiff alleges all that is needed under the statute—namely, that Porsche "intentionally" transmitted the update to his vehicle's PCM. Dkt. 1 ¶¶ 23, 68–70. This allegation is made plausible by the further allegations that the software update was made to Porsche's proprietary infotainment system, *id.* ¶¶ 1, 18, and that "Porsche has the technical capacity to update software in Porsche vehicles," *id.* ¶ 22, as well as by the fact that Porsche promptly contacted its dealerships to acknowledge that the update had "caused major functional issues with the PCM" and was "affecting virtually all Porsche vehicles," *id.* ¶ 36. Taken together, these allegations plausibly suggest that Porsche intentionally sent the update to Plaintiff's and other class members' PCMs.

To the extent Porsche merely facilitated sending the update, rather than sending the update itself, its conduct remains actionable under the CFAA. "[T]he CFAA does not limit its own reach to 'personal' or 'direct' access. To the contrary, it penalizes even *indirect* access to a 'protected computer.'" *Parsont*, 465 F. Supp. 3d

at 1291 (emphasis in original); *see also Tracfone Wireless v. Simply Wireless*, 229 F. Supp. 3d 1284, 1296 (S.D. Fla. 2017) (holding that "direct access to a computer is not required"). A defendant may thus be liable if it "'directs'" or "'encourages'" the conduct of another. *Parsont*, 465 F. Supp. 3d at 1291 (quoting *Teva Pharm. USA v. Sandhu*, 291 F. Supp. 3d 659, 671 (E.D. Pa. 2018)).

As the complaint makes clear, Plaintiff alleges in the alternative that Porsche facilitated Sirius's transmission of the update. *Id.* ¶¶ 3, 23, 42. The promotion was unique to Porsche model vehicles. Porsche and Sirius have coordinated on similar promotions in the past, *id.* ¶¶ 11 n.1 & ¶ 17, and in this instance, the update was connected to a Memorial Day promotion to provide free satellite radio access for Porsche owners, suggesting similar coordination, *id.* ¶ 23. It is also reasonable to infer that Sirius, as a technical matter, would need Porsche's cooperation in order to remotely modify the software in various Porsche models.

It is thus plausible to infer from those facts that, to the extent Porsche itself did not send the update, it materially assisted Sirius in doing so. Either way, Plaintiff alleges the necessary facts to state a claim.

### B. Porsche received no authorization to send the update.

Plaintiff alleges that Porsche sent the update to his PCM with no advance notice and without asking for, or receiving, his permission. Plaintiff has thus pled the

requisite fact to establish a lack of authorization under 18 U.S.C. § 1030(a)(5).

### 1. Plaintiff never provided Porsche with permission to access his PCM.

As a general rule, a defendant accesses a computer "without authority" if it has "no permission at all." *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1340 (N.D. Ga. 2017) (internal quotation marks omitted). In most situations triggering CFAA litigation, therefore, "courts have recognized that authorized access typically arises only out of a contractual or agency relationship." *United States v. Phillips*, 477 F.3d 215, 221 (5th Cir. 2007); *see also id.* at 221 n.5 (collecting cases).

Indeed, Porsche cites cases confirming that consent to a software update generally turns on contractual or other express agreement. *In re Apple Inc. Device Performance Litigation*, for instance, turned on the fact that Apple gave plaintiffs advance notice of a software update, which plaintiffs then chose to download. 347 F. Supp. 3d 434, 453 (N.D. Cal. 2018). Porsche's other cases are similarly premised on a voluntary choice to install software. *See In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1066 (N.D. Cal. 2012) (emphasizing that software "was *voluntarily downloaded* by the user") (emphasis in original); *In re Am. Online, Inc.*, 168 F. Supp. 2d 1359, 1368 (S.D. Fla. 2001) ("the consumers *expressly authorized* the installation of AOL 5.0 on their computers") (emphasis added).

Here, and unlike those cases, Porsche "never obtained Plaintiff's permission to send the update to his vehicle," dkt. 1 ¶ 3, and Plaintiff never consented to receiving it, *id.* ¶ 44. Nor could such consent be implied from previous permission: Plaintiff was never a SiriusXM subscriber with the vehicle at issue, *id.* ¶¶ 3, 25, 42, and as Porsche acknowledges, the complaint does not allege that Plaintiff had a relationship with Porsche, "contractual or otherwise," that included consent to allow Porsche to remotely modify Plaintiff's vehicle, dkt. 14-1 at 1.

> **2.     Even if Plaintiff's use of the radio antenna implied consent to receive radio signals, Porsche did not have authorization to modify the software in Plaintiff's vehicle.**

Defendants also act without authorization under the CFAA when their conduct falls outside the "expected norms of intended use." *United States v. Thomas*, 877 F.3d 591, 598 (5th Cir. 2017) (quoting *Phillips*, 477 F.3d at 219); *accord United States v. Morris*, 928 F.2d 504, 510 (2d Cir. 1991). The test asks whether a "reasonable computer user" would have believed the defendant's conduct was authorized in light of the "[1] expected norms of intended use or [2] the nature of the relationship established between the computer owner and the user." *Phillips*, 477 F.3d at 219–20.

Under the intended-use test, defendants cannot escape liability for conduct inconsistent with any reasonable understanding of consent. For example, a

defendant who is authorized to send emails and pull data through a computer system nonetheless acts "well within the area of unauthorized access" if he transmits a "worm" to that system. *Morris*, 928 F.2d at 509–10. Similarly, permission to access a public website does not authorize a defendant to deploy a "brute-force attack program" on that website. *Phillips*, 477 F.3d at 220.

Thus, defendants lack authorization if their conduct differs not just in degree, but in kind, from what a reasonable person would believe was authorized. *See Lockheed Martin Corp. v. L-3 Commc'ns Corp.*, No. 6:05-cv-1580-Orl-31KRS, 2007 WL 569994, at *1 (M.D. Fla. Feb. 20, 2007) (noting that the question under *Phillips* is whether the defendant's conduct was "entirely different" from the scope of his authorization).

Here, the radio antenna functions to access satellite radio channels. Dkt. 1 ¶ 15. A reasonable vehicle owner would not expect, however, that merely by having a radio antenna on their vehicle, they are somehow giving permission to third parties to modify their vehicle software. And just as sending emails is different in kind from transmitting a virus, the act of sending a signal carrying ordinary entertainment is fundamentally distinct from transmitting an update intended to alter a vehicle's software. Thus, Porsche's conduct lacked authorization under the intended-use test too.

### C. Porsche caused over $5,000 in losses.

Plaintiff also sufficiently alleges the requisite loss. The CFAA authorizes an action for "damage or loss by reason of a violation" of its provisions, *see* 18 U.S.C. § 1030(g), so long as the violation caused "loss to 1 or more persons during any 1-year period . . . *aggregating* at least $5,000 in value," *id.* at § 1030(c)(4)(A)(i)(I) (emphasis added). Plaintiff's allegations suffice for two reasons.

First, the text of the CFAA specifically provides for aggregation, which shows that Congress intended to allow a private right of action whenever any "single act" causes loss exceeding the $5,000 threshold on a classwide basis. *See Am. Online*, 168 F. Supp. 2d at 1374. Any contrary interpretation leads to "the absurd result" in which defendants can be held liable for causing $5,000 in loss to one computer, but not for causing $100 in loss to millions of computers. *Id.* Here, Plaintiff alleges that Porsche's update damaged *thousands* of vehicles, and that the resulting damage typically costs several thousand dollars to repair. Dkt. 1 ¶ 12; *see also id.* ¶¶ 36, 45. It is thus plausible to infer that Porsche's conduct caused losses far exceeding the $5,000 threshold.

Second, Plaintiff's individual losses also cross the threshold. The statute's use of "loss" connotes a broad definition, encompassing all "reasonable costs incurred in connection with" or in response to a violation. *Brown Jordan Int'l, Inc. v.*

*Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017) (citing § 1030(e)(11)). The statute does not require that the plaintiff's loss was necessary or that it was strictly related to computer repair. *Id.* at 1174–75 & n.2. Here, Plaintiff suffered an estimated $5,270.78 loss based on: (1) the $3,270.78 he paid to replace his PCM, dkt. 1 ¶ 47; and (2) the $2,000 he lost from having to spend as much as 10 hours dealing with the PCM malfunctioning and repairs, *id.* ¶ 48. Those allegations suffice, particularly in light of the broad definition of a statutory loss.

## II. Plaintiff states a claim for trespass to personalty.

Plaintiff also states a trespass claim. The claim is controlled by Georgia law, which Porsche violated when it interfered with Plaintiff's PCM without authorization and damaged it. In the alternative, even under Ohio law, Plaintiff states a valid claim, as Porsche acted intentionally and without consent.

### A. Plaintiff's trespass claim is controlled by Georgia law.

As an initial matter, Georgia law applies to Plaintiff's trespass-to-personalty claim. Porsche's argument that Ohio law should apply misunderstands Georgia choice-of-law rules: because no statute governs trespass-to-personalty claims in Ohio, and because Georgia's statute merely "embodies the common law action," *Levenson v. Word*, 668 S.E.2d 763, 765 (Ga. App. 2008), *aff'd*, 686 S.E.2d 236 (Ga. 2009) (internal quotation marks omitted), "the Georgia choice of law rule

requires application of the common law as construed by the courts of Georgia," *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 n.6 (11th Cir. 1987).

Although it applies them incorrectly to Plaintiff's trespass claim, Porsche is correct that Georgia choice-of-law principles decide which law governs. Dkt. 14-1 at 10; *see SEC v. Price*, No. 1:12-cv-2296-TCB, 2015 WL 11198937, at *5 (N.D. Ga. Mar. 31, 2015). And as Porsche asserts, if the last element to make a tort actionable was "the [plaintiff's] alleged injury" that he "suffered in" another state, "a Georgia court will defer to [that other] state's statutes, as well as its judicial decisions authoritatively interpreting those statutes . . . ." *Coon v. Med. Ctr.*, 797 S.E.2d 828, 833–34 (Ga. 2017), *cited in* dkt. 14-1 at 10. But critically, "[i]n the absence of a statute . . . a Georgia court will apply the common law as expounded by the courts of Georgia." *Id.* at 834; *see also Kirkpatrick*, 827 F.2d at 725 n.6. In fact, where there is no foreign statute "Georgia courts *presume* that the common law controls[] and . . . apply the common law as developed in Georgia and not in another state." *Shorewood Pack'g Corp. v. Commercial Union Ins. Co.*, 865 F. Supp. 1577, 1581 (N.D. Ga. 1994) (emphasis added).

Porsche concedes Ohio has no statute applicable to the trespass claim. Dkt. 14-1 at 11. That means Georgia law applies. As the Eleventh Circuit has explained, "it is clear that [Georgia's] application of another jurisdiction's laws is *limited* to statutes

and decisions construing those statutes. When no [other state's] statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Frank Briscoe Co. v. Ga. Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983) (citations omitted); *see also Trusted Data Sols., LLC v. Kotchen & Low, LLP*, No. 1:14-cv-1419-TCB, 2015 WL 11251959, at *3 (N.D. Ga. Feb. 6, 2015) ("Georgia's choice-of-law rules limit the application of another jurisdiction's laws to statutes and decisions construing those statutes." (internal quotation marks omitted)). Since no Ohio statute is implicated, this Court should "presume that the common law controls" and "apply the common law as developed in Georgia and not in" Ohio. *Shorewood Pack'g Corp.*, 865 F. Supp. at 1581–82; *see also In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 679 (N.D. Ga. 2003) (holding Georgia law governs if no "controlling statutes of foreign states").

In an effort to escape this conclusion, Porsche argues the choice-of-law rules would shift from Ohio to Georgia then *back* to Ohio because the "trespass to personalty claim . . . is governed by statute in Georgia . . . ." Dkt. 14-1 at 11. But *Glock v. Glock*, the lone case Porsche points to, contains *no* choice of law analysis. 247 F. Supp. 3d 1307, 1320 & n.105 (N.D. Ga. 2017), *aff'd*, 714 F. App'x 987 (11th Cir. 2018) (never deciding which law applied and indicating only that "[t]he Court may have to apply foreign law"). Rather, *Glock* holds only that, under

13

Georgia's civil RICO statute, a plaintiff must allege she suffered a "domestic injury." *Id.* at 1318. That, of course, is irrelevant here since Plaintiff does not plead a state-law RICO claim. As such, Porsche cites not a single case holding a court must apply foreign common law to a tort claim in Georgia simply because the tort implicates a Georgia statute. That gets the rule set out by the Georgia Supreme Court, Eleventh Circuit, and this Court—under which Georgia law applies unless a *foreign* statute is implicated—exactly backwards. As far as Plaintiff can tell, no court has *ever* adopted the position Porsche urges. This Court shouldn't be the first.

At least part of the confusion in Porsche's argument stems from its unstated assumption that "O.C.G.A. §§ 51-10-1 to 51-10-3" displaces, rather than codifies, the common-law tort. But trespass-to-personalty has been a common-law tort in Georgia since long before those provisions were enacted. *E.g.*, *Mangham v. Reed,* 11 Ga. 137, 138 (1852). And in Georgia, if "statutory text can be as reasonably understood to conform to the common law as to depart from it, the courts usually *presume* that the legislature meant to adhere to the common law." *FDIC v. Loudermilk*, 761 S.E.2d 332, 341–42 (Ga. 2014) (emphasis added) (holding statute defining standard of care "was meant to retain the common law").

When, as here, a statute merely "retain[s] the common law," *id.*, Georgia's choice-of-law principles dictate that Georgia law governs. *Ala. Midland Ry. Co. v.*

14

*Guilford*, 46 S.E. 655 (Ga. 1904), cited with approval in *Coon*, 797 S.E.2d at 829–30. In *Guilford*, the plaintiff sued a railroad company in Georgia for injuries he suffered in Alabama, *id.* at 655, and the trial court instructed the jury on the standard of care under Alabama common law, even though a Georgia code section defined the "extraordinary diligence" standard applicable to railroads, *id.* at 656. However, the Georgia code section was "merely declaratory and explanatory of the common law." *Id.* Therefore, "the decision[s] of the Georgia courts, rather than those of some other jurisdiction, must be followed." *Id.* It was error for the trial court in *Guilford* to hold otherwise, just as it would be error for the Court to apply Ohio law rather than Georgia law to Plaintiff's trespass claim here.

Like the diligence standard in *Guilford*, the trespass provisions in the Georgia Code are "but a codification of the common-law . . . ." *Ault v. Meager*, 37 S.E. 185, 186 (Ga. 1900). For decades, the Court of Appeals has held that O.C.G.A. § 51-10-1 "embodies the common law . . . ." *Levenson*, 668 S.E.2d at 765; *see also Pierce v. Clayton Cnty., Ga.*, 717 F. App'x 866, 872 (11th Cir. 2017) ("Georgia codified the common-law action . . . at O.C.G.A. § 51-10-1.").[2] These code

---

2    Although these cases do not directly address a trespass-to-personalty claim, they do address claims under O.C.G.A. § 51-10-1. Porsche offers no argument that the rule would be different for this section and the ensuing two sections or that the

sections simply recite, rather than displace, "[t]he *common law right* to the exclusive use and possession of property," whether "land or chattel . . . ." *Tacon v. Equity One, Inc.*, 633 S.E.2d 599, 603–04 (Ga. App. 2006).

Based on these rules, this Court has held "claims asserted" under O.C.G.A. § 51-10-1 like Plaintiff's "are exclusively governed by the common law." *Price*, 2015 WL 11198937, at *5 (discussing conversion claim, codified at O.C.G.A. § 51-10-1). "As such, the Court applies *Georgia law* to those claims" under Georgia choice-of-law principles. *Id.* (emphasis added). In other words, Porsche's novel choice-of-law theory would directly conflict with a prior decision of this Court on precisely the issue Porsche's motion raises. Porsche offers no authority that would support such a departure. This Court should therefore apply these well-established choice of law principles and apply Georgia law to Plaintiff's trespass-to-personalty claim.

**B.     Under Georgia law, Porsche is liable for trespass to personalty.**

Under Georgia law, "[a]ny unlawful abuse of or damage done to the personal property of another constitutes a trespass for which damages may be recovered." O.C.G.A. § 51-10-3. This means, as several Georgia appellate courts have put it,

---

result would be different based on the name of the tort. Nor is there any principled reason for this Court to hold as much, given the undisputed common-law origin of trespass-to-personalty.

that "[t]respass will doubtless lie for acts of interference with goods." *Caldwell v. Church*, 802 S.E.2d 835, 841 (Ga. App. 2017) (quoting *Md. Cas. Ins. Co. v. Welchel*, 356 S.E.2d 877, 879 (1987)).

Porsche never argues that Plaintiff's allegations fail to state a claim under Georgia (as opposed to Ohio) law, so the Court need not reach this issue. But to be clear, Plaintiff alleges just the sort of conduct proscribed by Georgia's law: the unlawful interference with, and damage to, property. *See Welchel*, 356 S.E.2d at 880 (damage to property "is inseparable from trespass") (internal quotation marks omitted).

The fact that Porsche believes it may have been authorized to send a radio signal to Plaintiff's PCM does not doom the trespass claim. Permission to send a radio signal does not entail authorization to damage a PCM. *See, e.g.*, *MCI Worldcom Net. Servs. v. Von Behren Elec., Inc.*, No. 1:00-cv-3311-JTC, 2002 WL 32166535, at *6 (N.D. Ga. May 21, 2002) ("unauthorized … damage" to another's property gives rise to a trespass claim) (citing *Welchel*, 356 S.E.2d at 879).

For example, in *Mr. Transmission, Inc. v. Thompson*, the plaintiff brought his vehicle in for repairs because his vehicle's transmission was leaking. 328 S.E.2d 397, 398–99 (Ga. App. 1985). But the repair shop, rather than simply fixing the leak, disassembled the transmission, damaging its components in the process. *Id.*

Even though the shop had authorization to work on the transmission, because it was not authorized to disassemble the transmission, or damage it, the plaintiff had a meritorious claim for trespass. *Id.* So too here. Even if Porsche was authorized to send a radio signal, Porsche lacked authorization to modify the PCM's software or to damage the PCM to the point where it needed to be replaced.

Neither is there merit, under Georgia law, to Porsche's argument that Plaintiff's pleadings are too "speculative" because they suggest it may have been Sirius (rather than Porsche) who sent the update. Plaintiff does allege, in the alternative, that Sirius sent the update. *See generally* Fed. R. Civ. P. 8(d)(2) (allowing alternative allegations). But to be clear, Plaintiff also alleges that Sirius sent the update "at Porsche's direction or with Porsche's facilitation." Dkt. 1 ¶ 3.

Under Georgia law, these allegations give rise to a claim for trespass just as if Porsche acted alone. *Plantation at Bay Creek Homeowners Ass'n, Inc. v. Glasier*, 825 S.E.2d 542, 559 (Ga. App. 2019) ("One who aids, abets, incites, encourages, or directs, by conduct or words, in the perpetration of a trespass, is liable equally with actual trespassers." (internal alterations and quotation marks omitted)). The Court should therefore reject Porsche's argument for dismissal on this ground.

Finally, it is worth noting that under Georgia law, Plaintiff need not establish scienter to state a claim for trespass. *MCI Worldcom*, 2002 WL 32166535 at *6; *see*

*also Welchel*, 356 S.E.2d at 880 (noting that under the "concurrent" tort of conversion, it is irrelevant whether the defendant "acts in good faith") (quoting *Miller v. Wilson*, 25 S.E. 578 (Ga. 1896)). And as other jurisdictions have recognized, the act of sending electronic signals to a computer "is clearly intentional," as they must be "affirmatively directed to their destination." *CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015, 1021 (S.D. Ohio 1997).

For these reasons, Plaintiff's trespass claim should not be dismissed.

### C.    In the alternative, Plaintiff states a valid trespass to chattels claim under Ohio law.

Even if Ohio law were to govern, Plaintiff still states a viable trespass-to-chattels claim. Under Ohio law, defendants are liable for trespass to chattels if they intentionally: (1) dispossess the plaintiff of his chattel; or (2) use or intermeddle with the plaintiff's chattel. *Mercer v. Halmbacher*, 44 N.E.3d 1011, 1017 (Ohio Ct. App. 2015). Porsche disputes that it acted intentionally and then asserts that Plaintiff's use of a radio antenna constitutes consent to a software update. Neither contention has merit.

First, the intent element requires only that defendant knew to a "substantial certainty" that its action would cause physical contact with the plaintiff's chattel; indeed, it is "immaterial" whether the defendant "understood it was violating

[plaintiff's] possessory rights." *Jedson Eng'g v. Spirit Constr. Servs.*, 720 F. Supp. 2d 904, 926 (S.D. Ohio 2010). As previously discussed, the act of sending electronic signals to a computer "is clearly intentional." *CompuServe*, 962 F. Supp. at 1021. Porsche's transmission of the update to Plaintiff's PCM, dkt. 1 ¶¶ 3, 23, 42, therefore suffices to establish intent.

Second, Porsche argues that Plaintiff impliedly consented consistent with *CompuServe*. But in that case, the court analogized the defendant to a business owner inviting the public to its premises, reasoning that this created a "tacit invitation" for internet users "to send e-mail to its subscribers." 962 F. Supp. at 1023–24. Here, Plaintiff is an ordinary consumer who purchased a used vehicle with a satellite radio receiver, dkt. 1 ¶ 40, which bears no resemblance to the commercial behavior that could create a generalized public invitation under Ohio law. Porsche thus failed to make a threshold showing of consent, so its revocation analysis is irrelevant.

## III.    Plaintiff has stated a viable negligence claim under Georgia law.

Porsche seeks dismissal of Plaintiff's negligence claim on the ground that Porsche owed Plaintiff no duty. Plaintiff's complaint, however, alleges that Porsche owed a duty not to damage Plaintiff's "chattel or personalty." Dkt. 1 ¶ 62. Because

Georgia law imposes a duty not to damage another's property, Plaintiff has adequately stated a claim for negligence.

"'Georgia law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken.'" *Encompass Indem. Co. v. Ascend Techs., Inc.*, No. 1:13-cv-02668-SCJ, 2015 WL 10582168, at *6 (N.D. Ga. Sept. 29, 2015) (quoting *Allstate Ins. Co. v. Sutton*, 658 S.E.2d 909, 914 (Ga. App. 2008)). That duty applies with equal force to gratuitous and contractual actions alike. *See id.* at *7; *see also Energy Sys. Grp., LLC v. Ware, Inc.*, No. 1:14-CV-03049-ELR, 2016 WL 7888028, at *2 (N.D. Ga. June 28, 2016) ("The . . . legal duty to exercise ordinary care not to endanger the . . . property of others exists in law apart from any contractual obligation . . . .").

In a similar vein, Georgia common law also "impose[s] … the duty not to negligently and wrongfully injure and damage the property of [another]." *Unger v. Bryant Equip. Sales & Servs., Inc.*, 335 S.E.2d 109, 111 (Ga. 1985) (internal quotation marks omitted). This, too, is a "general duty owing by the defendant to the plaintiff" independent of any contract. *Monroe v. Guess*, 154 S.E. 301, 303 (Ga. App. 1930); *see also Ware*, 2016 WL 7888028, at *2.

Here, Porsche sent or helped send the update that damaged Plaintiff's and other owners' vehicles. Under the case law cited above, the fact that Porsche did not charge Plaintiff for doing so, and instead undertook sending the update gratuitously, does not change the fact that Porsche owed a duty to use reasonable care and skill in doing so.

A similar duty is embodied in Georgia statutes. Under O.C.G.A. § 51-10-3, "[a]ny unlawful abuse of or damage done to the personal property of another constitutes a trespass. . . ." Similarly, O.C.G.A. § 51-9-1 creates a duty not to "interfer[e] with enjoyment of private property." While the latter provision often applies to real property, "there is authority suggesting that the statute applies both to real property and chattel." *Dunigan v. Countrywide Home Loans, Inc.*, No. 1:08-cv-3735-CC, 2009 WL 10698799, at *4 (N.D. Ga. Sept. 10, 2009) (citing *Tacon*, 280 Ga. App. at 188). Thus, at least two Georgia statutes recognize the duty that Plaintiff alleges Porsche breached.

Porsche suggests no such statutory duty exists, but its reasoning is based on the notion that Plaintiff's separate cause of action for trespass to personalty should be dismissed. To that end, Porsche cites *Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686 (Ga. 2013), reasoning that (in its view) Plaintiff failed to state a trespass to personalty claim, so it therefore has no separate duty of care to refrain from

damaging another's property. But *Jenkins* held only that a negligence claim must rely on "a legal duty with some ascertainable standard of conduct" from elsewhere in the law. *Id.* at 688. Because here there are both common law and statutory articulations of the duties Porsche breached, *Jenkins* is inapposite. And more fundamentally, the mere fact that a given set of allegations might fail to state a different claim, under a different state's law, is irrelevant to whether Georgia law imposes a duty to exercise ordinary care not to damage another's property.

In sum, because there are several common law and statutory sources of the duty Porsche owed, Plaintiff's negligence claim should not be dismissed.

## IV.  Plaintiff stated a viable unjust enrichment claim.

Georgia law recognizes "'the theory of unjust enrichment … when [1] there is no legal contract and [2] where there has been a benefit conferred which would result in an unjust enrichment unless compensated.'" *CDM Constructors v. Randall Mech. Inc.*, No. 1:19-cv-1178-MHC, 2019 WL 7819488, at *3–4 (N.D. Ga. Oct. 21, 2019) (quoting *Smith Serv. Oil Co. v. Parker*, 549 S.E.2d 485, 487 (Ga. App. 2001)).

Here, Plaintiff alleges the facts necessary to state an unjust-enrichment claim. First, as Porsche admits, there is no legal contract between the parties. Dkt. 1 ¶ 40. Second, Plaintiff conferred a benefit on Porsche that would be unjust to keep:

namely, Plaintiff paid over $3,000 to replace his PCM. *Id.* ¶¶ 45–47. The PCM is a

proprietary system made by Porsche. *Id.* ¶¶ 1, 12–13, 18. And Plaintiff paid to have

that component repaired at a Porsche dealership.[3] *Id.* ¶¶ 45–47. Plaintiff thus paid

over $3,000 at a Porsche dealership to replace a part Porsche manufactured after

his original PCM was damaged by Porsche's conduct. *Id.* ¶¶ 45–47, 83. These facts

establish a reasonable inference that Porsche was unjustly enriched.

Porsche nevertheless argues that the claim fails because Plaintiff was

"compensated" for conferring this benefit, suggesting that because Plaintiff paid

for a replacement PCM, and then received a PCM, it is not inequitable for Porsche

to keep that payment. But Plaintiff paid to replace that part only because Porsche

damaged it. *Id.* ¶¶ 2–3, 22–30. In other words, Plaintiff would not have been in the

market for a replacement PCM but for Porsche's misconduct, yet Porsche has

profited nonetheless from the sale of the replacement to Plaintiff and many other

drivers. Allowing Porsche to retain the profit from damaging private property and

then charging to repair the damage would result in a windfall that "equitably ought

---

[3]  Although Plaintiff paid this amount to a dealer, and not directly to Porsche, a portion flowed to Porsche, dkt. 1 ¶ 83, who sold the part to the dealer; Plaintiff needn't "allege a direct payment" to the defendant. *Bolinger v. First Multiple Listing Serv.*, 838 F. Supp. 2d 1340, 1367 (N.D. Ga. 2012); *see also Terrill v. Electrolux Home Prods.*, 753 F. Supp. 2d 1272, 1290 (S.D. Ga. 2010) (purchase of product from downstream seller "confers a marginal benefit on Electrolux").

to [be] returne[d] or compensate[d] for." *Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1362 (N.D. Ga. 2018).

Porsche's citation to *Speedway Motorsports, Inc. v. Pinnacle Bank* does not compel a different result. 727 S.E.2d 151, 154–155 (Ga. App. 2012). That court held a bank was not unjustly enriched merely because it had unknowingly done business with a third-party who defrauded the plaintiff, reasoning the bank was a "bona fide purchaser for value" and received only that "to which it was entitled." *Id.* Here, by contrast, Porsche is not blameless: it caused or helped cause the damage to Plaintiff's vehicle, forcing him to buy the replacement part, and then unjustly profited from that purchase.

Finally, Porsche argues that the unjust-enrichment claim fails because Porsche did not know it was receiving an unjust benefit. But Plaintiff has pled knowledge: Porsche sent (or cooperated in sending) the update that damaged the PCMs, knew about the resulting malfunctioning, sold replacement PCMs, and knew those units would be sold in conjunction with repairing the problem resulting from its update. *Id.* ¶¶ 12, 14, 34–37, 45–47. Those allegations suffice at the pleadings stage.

## CONCLUSION

For the foregoing reasons, the Court should deny Porsche's motion to dismiss.

[signature on following page]

25

Respectfully submitted,

*/s/ Michael A. Caplan*
Michael A. Caplan
Georgia Bar No. 601039
T. Brandon Waddell
Georgia Bar No. 252639
CAPLAN COBB LLP
75 Fourteenth Street, NE, Suite 2750
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
bwaddell@caplancobb.com

Matthew R. Wilson (*pro hac vice*)
mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice*)
mboyle@meyerwilson.com
MEYER WILSON CO., LPA
305 West Nationwide Boulevard
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

David Stein (*pro hac vice*)
Alexander Bukac (*pro hac vice*)
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ds@classlawgroup.com
ajb@classlawgroup.com

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF COMPLIANCE WITH LR 5.1

I certify that the foregoing document is written in 14 point Times New Roman font in accordance with Local Rule 5.1.

*/s/ Michael A. Caplan*
Michael A. Caplan

## CERTIFICATE OF SERVICE

I hereby certify that on this day I caused a true and correct copy of the foregoing document to be filed with the clerk's office by this Court's CM/ECF system which will serve a true and correct copy of the same upon all counsel of record.

This 24th day of March, 2021.

/s/ Michael A. Caplan
Michael A. Caplan