**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| KENT BOWEN and KATHLEEN DARNELL on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>PORSCHE CARS, N.A., INC.<br><br>    Defendant. | Case No. 1:21-CV-471-MHC |

**<u>UNOPPOSED MOTION FOR</u>**
**<u>PRELIMINARY APPROVAL OF CLASS SETTLEMENT</u>**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES .......................................................... iv

INTRODUCTION ........................................................................ 1

BACKGROUND AND PROCEDURAL HISTORY ............................ 3

I.   Factual background. ............................................................. 3

II.  Procedural history. .............................................................. 4

OVERVIEW OF THE SETTLEMENT ........................................... 7

I.   The proposed settlement class. ............................................. 7

II.  The relief for the settlement class. ....................................... 7

III. Scope of class members' release of claims. ............................ 10

IV.  Attorneys' fees and litigation costs. ..................................... 10

ARGUMENT AND CITATION TO AUTHORITY .......................... 11

I.   The proposed settlement is fair, reasonable, and adequate
     under the Rule 23(e)(2) elements. ........................................ 12

     A.   Both the Plaintiffs and their counsel have adequately
          represented the class. ................................................... 12

     B.   The proposed settlement was negotiated at arm's length. .......... 14

     C.   The quality of relief to the class weighs in favor of approval. ........... 16

          1.   The settlement provides strong relief for
               the proposed class. ............................................... 16

2.  Continued litigation would entail substantial cost, risk, and delay. ...................................................... 18

3.  The settlement agreement provides for a streamlined claims process and an effective distribution of proceeds to the class. ............................ 19

4.  The terms of the proposed attorneys' fees support preliminary approval...................................................... 20

5.  The parties have no other agreements pertaining to the settlement........................................................... 22

D.  The settlement treats all settlement class members equitably............ 22

II.  The proposed settlement is fair, reasonable, and adequate under the *Bennett* factors. ........................................................ 24

A.  Plaintiffs' likelihood of success; the complexity, expense, and duration of continued litigation; and the stage at which settlement was achieved all favor preliminary approval.................... 25

B.  The range of possible recovery and the point at which the settlement is fair, reasonable, and adequate, favor preliminary approval............................................................ 26

C.  The judgment of class counsel favors preliminary approval. ............ 27

III.  This Court should preliminarily certify the Settlement Class because it meets all requirements of Rule 23(a) and (b)........................................... 28

A.  The Settlement Class meets the requirements of Rule 23(a). ............ 29

1.  The Settlement Class is ascertainable............................ 29

2.  The settlement class is sufficiently numerous. .............. 30

3.  There are questions of fact and law common to the settlement class. ...................................................... 31

4.  The class representatives' claims are typical of the Settlement Class.......................................... 32

5.  The class representatives and class counsel are adequate to protect the interests of the settlement class. ........................................... 33

B.  The Settlement Class meets the requirements of Rule 23(b). ........... 34

1.  The Settlement Class satisfies Rule 23(b)(3) because common issues of law and fact predominate................ 34

2.  Class-wide settlement is the superior method for resolving the claims at issue in this case.................. 36

IV.  The Court should approve the form and plan for disseminating notice to the class members. ......................................... 37

A.  The Court should adopt the parties' proposed notice program. ......... 38

B.  The Court should adopt the proposed settlement schedule. ............... 39

CONCLUSION.................................................................... 40

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................ 34, 36, 37

*Battle v. Liberty Nat'l Life Ins. Co.*,
  770 F. Supp. 1499 (N.D. Ala. 1991),
  *aff'd* 974 F.2d 1279 (11th Cir. 1992) ................................................. 34

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ..................................................... 11, 24

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ........................................................... 21

*Cherry v. Dometic Corp.*,
  986 F.3d 1296 (11th Cir. 2021) ............................................. 29, 30, 36

*Curriuolo v. GM Co.*,
  823 F.3d 977 (11th Cir. 2016) ........................................................... 35

*Drazen v. Pinto*,
  41 F.4th 1354 (11th Cir. 2022) ......................................................... 28

*In re Blue Cross Blue Shield Antitrust Litig.*,
  2022 WL 4587618 (N.D. Ala. Aug. 9, 2022) ...................................... 23

*In re Checking Acct. Overdraft Litig.*,
  286 F.R.D. 645 (S.D. Fla. 2012) ........................................................ 32

*In re Checking Acct. Overdraft Litig.*,
  307 F.R.D. 656 (S.D. Fla. 2015) ........................................................ 31

*In re Equifax Customer Data Sec. Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020),
  *aff'd in relevant part, rev'd in part*, 999 F.3d 1247 ............................ 23

*In re Equifax Customer Data Sec. Breach Litig.*,
   999 F.3d 1247 (11th Cir. 2021) ............................................................. 12

*In re HealthSouth Corp. Sec. Litig.*,
   334 F. App'x 248 (11th Cir. 2009) ......................................................... 38

*In re Tri-State Crematory Litig.*,
   215 F.R.D. 660 (N.D. Ga. 2003) ............................................................ 32

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ..................................................... 15, 27

*Kornberg v. Carnival Cruise Lines, Inc.*,
   741 F.2d 1332 (11th Cir. 1984) .............................................................. 32

*Kuhr v. Mayo Clinic Jacksonville*,
   530 F. Supp. 3d 1102 (M.D. Fla. 2021) ................................................. 11

*Lewis v. ARS Nat'l Servs., Inc.*,
   2011 WL 3903092 (M.D. Ala. Sept. 6, 2011) ........................................ 36

*Little v. T-Mobile USA, Inc.*,
   691 F.3d 1302 (11th Cir. 2012) .............................................................. 28

*M.H. v. Berry*,
   2017 WL 2570262 (N.D. Ga. June 14, 2017) ......................................... 31

*Montoya v. PNC Bank, N.A.*,
   2016 WL 1529902 (S.D. Fla. Apr. 13, 2016) .......................................... 18

*Pinon v. Daimler AG*,
   2021 WL 6285941 (N.D. Ga. Nov. 30, 2021) ................................. passim

*Pizarro v. Home Depot, Inc.*,
   2020 WL 6939810 (N.D. Ga. Sept. 21, 2020) ........................................ 30

*Poertner v. Gillette Co.*,
   618 F. App'x 624 (11th Cir. 2015) ......................................................... 21

*Sanchez-Knutson v. Ford Motor Co.*,
310 F.R.D. 529 (S.D. Fla. 2015) ........................................................................ 33

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ........................................................................ 34

*Williams v. Mohawk Indus., Inc.*,
568 F.3d 1350 (11th Cir. 2009) ........................................................................ 31

*Wilson v. EverBank*,
2016 WL 457011 (S.D. Fla. Feb. 3, 2016) .................................................... 17, 18

**Rules**

Fed. R. Civ. P. 23 ........................................................................ passim

## **INTRODUCTION**

After two years of litigation, Plaintiffs are pleased to inform the Court that the parties have reached a class settlement and are ready to enter the court-approval process under Rule 23(e). (The settlement agreement is attached as Exhibit A to the Joint Declaration of Plaintiffs' Counsel.) Per Rule 23(e)(1), the first step in that process asks the Court to preliminarily assess whether it will likely be able to (a) approve the settlement and (b) certify the settlement class. Upon making those findings, the reviewing court directs notice of the settlement to the class, so that the class will have an opportunity to participate and share its views, before the parties return with a motion for final settlement approval a few months later.

Plaintiffs respectfully submit that the settlement here warrants approval. As the Court may recall, the underlying litigation stems from problems with the "Porsche Communication Management" or "PCM" system in vehicles across the country. The PCM is the infotainment system that controls satellite radio, navigation, and the like. Beginning in May 2020, many Porsche drivers complained that their PCMs had begun entering constant rebooting cycles. The PCMs were rebooting over and over, while emitting loud static noise, rendering them non-functional until repairs were performed. For some drivers, the repairs

were quick and came at no cost; but in other instances, PCM repairs cost $4,000 or more.

The parties' proposed settlement makes compensation available to everyone in the proposed settlement class who spent time or money addressing the PCM rebooting. The settlement provides *full* reimbursement of out-of-pocket costs incurred while repairing a PCM, up to $7,500 per vehicle. Porsche owners who have not yet succeeded in obtaining satisfactory repairs may do so now and be reimbursed for their expenses. And those class members who were able to resolve their PCM rebooting at no cost will be eligible for payment to compensate for the inconvenience of resolving the problem; they will have their choice of $25 in cash or a $50 dealership credit. From Plaintiffs' perspective, this relief approaches—and in some ways may exceed—the level of compensation that realistically may have been obtainable after a successful trial.

Plaintiffs accordingly ask that the Court find under Rule 23(e)(1) that it will likely be able to approve the settlement and certify the settlement class, directing notice to the class consistent with the notice program in the parties' settlement agreement.

## BACKGROUND AND PROCEDURAL HISTORY

### I.     Factual background.

This lawsuit arises from allegations that in late May 2020, Porsche owners around the country began experiencing problems with their vehicles' PCM infotainment systems. Dkt. 40. As noted above, the PCM controls information, communication, and entertainment functions—including navigation, satellite radio, telephone, and sound settings. *Id.* ¶¶ 19-20.

Owners complained that, while their PCMs had previously been working fine, around May 2020 the units began entering a near-constant rebooting cycle— turning on and off every few minutes in a continuous loop. *See id.* ¶ 32 (collecting complaints from Porsche drivers posted on various online forums). Drivers reported that their PCMs were inoperative, eliminating access to the entertainment and navigation systems. *Id.* ¶ 28. While rebooting, the PCMs emitted an unpleasant static noise. *Id.* The reboot cycle at times continued even when the vehicles were not in use. Some Porsche owners reported that the car battery had drained overnight because of the rebooting. *See, e.g.*, *id.* ¶¶ 44, 53.

Shortly after the problems began, it was suspected that the cause had been a remote update transmitted to the PCMs—allegedly sent by Porsche directly or with Porsche's help. *Id.* ¶¶ 24-25. Yet, Plaintiffs allege, Porsche chose not to offer

compensation to all affected owners. *Id.* ¶ 33. This meant, for example, that when owners paid to replace the PCM, at an average cost of about $4,000, Porsche did not reimburse those repair costs—nor did it instruct its dealers to cover the replacements under warranty. *Id.* In addition to repair costs, some drivers were without use of their vehicles for several days, and sometimes a few weeks, which meant drivers may have spent money on rental cars, Uber/Lyft rides, and the like. *Id.* ¶ 84.

Plaintiffs Kent Bowen and Kathleen Darnell were among the Porsche owners affected. Mr. Bowen paid several thousand dollars to replace his vehicle's PCM, while Ms. Darnell paid over a thousand dollars to repair the PCM and replace the battery. *Id.* ¶¶ 40-48; 50-59.

## II.    Procedural history.

Mr. Bowen brought suit on January 29, 2021, and Ms. Darnell joined later that year. Dkts. 1; 39. In the complaint, Plaintiffs alleged that Porsche either sent or helped send the software update that caused the PCMs to enter the constant reboot cycle. Dkt. 40 ¶¶ 24-25.

Plaintiffs brought four claims, including for trespass to personalty and for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. *Id.* ¶¶ 71-85. They also requested that the Court certify a class under Rule 23(b)(3). *Id.* ¶¶ 60-70.

Over the past two years, the parties have vigorously litigated Plaintiffs' claims. In February 2021, Porsche moved to dismiss the complaint, Dkt. 14, which Plaintiffs opposed. Dkt. 21. On September 20, 2021, the Court granted Porsche's motion in part, dismissing the counts for negligence and unjust enrichment. Dkt. 36. At the same time, the Court sustained the trespass and CFAA claim, and also agreed with Plaintiffs that Georgia common law governed Plaintiff's claim even though he had purchased his vehicle (and experienced the PCM rebooting) outside of Georgia. *See generally id.* at 15-21.

The parties then engaged in discovery. Plaintiffs served two sets of requests for production of documents, along with a set of interrogatories. Joint Declaration of Plaintiffs' Counsel ¶ 13 (hereinafter "Counsel's Decl."). After Porsche responded to those requests, counsel met and conferred repeatedly to negotiate the scope of Porsche's responses and production. *Id.* ¶ 14. One discovery dispute concerning Porsche's response to an interrogatory was brought to the Court for resolution in May 2022. Dkts. 58; 59.

Plaintiffs also served a third-party subpoena on Sirius XM—the other entity suspected to have been involved in transmitting the May 2020 update. Counsel's Decl. ¶ 15. Plaintiffs worked with Sirius to negotiate a document production. *Id.* Plaintiffs then reviewed the thousands of documents produced by Porsche and

Sirius, working alongside their technical expert to prepare for upcoming depositions and class certification. *Id.* ¶ 18.

All the while, Porsche consistently denied liability and vigorously defended itself against the suit. *Id.* ¶ 9. The parties were beginning to prepare for—but did not ultimately reach—the class-certification stage of the litigation, when they agreed to mediate.

On August 9, 2022, the parties mediated with the assistance of Joseph Loveland of JAMS. *Id.* ¶ 21. Following the mediation, and over the course of several weeks with Mr. Loveland's continued assistance, the parties executed a binding term sheet with the material terms of the class-wide relief. *Id.* The parties did not negotiate attorneys' fees and litigation costs at the August 2022 mediation, instead deciding to return to conduct another mediation with Mr. Loveland in October 2022. *Id.* ¶¶ 22-23. After reaching agreement regarding fees and costs, the parties spent several weeks negotiating the details of a comprehensive settlement agreement memorializing the terms on which they have agreed to resolve this case.

The details of the parties' proposed class settlement are reflected in the settlement agreement, attached as Exhibit A to the joint declaration of Plaintiffs' counsel. (Below, the agreement is shortened as "Settl. Agrm.")

## <u>OVERVIEW OF THE SETTLEMENT</u>

### I.     The proposed settlement class.

The parties' settlement agreement defines the settlement class as:

*[A]ll entities and individuals in the United States who, as of May 20,*

*2020, owned or leased an Eligible Vehicle.*[1]

Settl. Agrm. § II(dd). "Eligible Vehicle," in turn, is defined to include any Porsche

vehicle equipped with an XM radio antenna and PCM 3.1 (which is the sole PCM

model to have been impacted by the rebooting at issue). *Id.* § II(h).

### II.    The relief for the settlement class.

The proposed settlement provides a range of benefits to the class.

<u>*Reimbursement of costs*</u>: First, Porsche has agreed to reimburse any class

members who spent money in connection with resolving PCM rebooting. Class

members are entitled to reimbursement for PCM replacements, PCM repairs,

battery replacements, and any other vehicle repair related to the rebooting. *Id.* ¶ 4.

Class members whose vehicles required repairs will also be entitled to

reimbursement of their incidental expenses. This includes costs associated with

towing the vehicles (given that some owners reported dead batteries), rental cars

---

[1] Excluded from the Class are Defendant, any Released Persons, Class Counsel, and the Court, as well as the Court's spouse, and any person within the third degree of relationship to either of them

(for those owners who were without the use of their vehicle during the repair period), and related costs like Uber or Lyft rides. *Id.*

The settlement provides a ceiling for these reimbursements of $7,500 per vehicle. *Id.* But since this cap well exceeds the average cost of a PCM replacement ($4,000), Plaintiffs anticipate the cap will impact few (if any) class members. Counsel's Decl. ¶ 25. In addition, class members will be reimbursed only to the extent they have not already previously been reimbursed for their out-of-pocket expenses and are able to substantiate their expenses with documentation. Settl. Agrm.§ II(r) & § IV(4).

*Ongoing relief*: The settlement also covers Porsche owners whose vehicles continue to experience problems (or who may begin to experience problems in the future). Under the settlement, reimbursement remains available for PCM repairs for twelve months following the final approval hearing. *Id.* ¶ 6. The proposed notices, attached as Exhibits 2, 3, and 4 to the settlement agreement, will inform class members that if they still need PCM-rebooting-related repairs, they should visit an authorized Porsche dealership, where their costs will be reimbursable. *See* Exs. 2, 3, 4 to Settl. Agrm.

*Compensation for time spent*: The settlement also accounts for the fact that many class members still had to spend time and effort to rectify the issues caused

by the update but were able to either benefit from a free "hard reset" repair offered by Porsche dealerships or take some other step to resolve the issue that did not require them to incur costs. To ensure all class members have the opportunity to benefit from the settlement, the settlement includes a "floor" to provide a minimum level of compensation to these individuals. *See* Settl. Agrm. ¶ 4. Any class member who spent time addressing the issue but does not claim reimbursement of out-of-pocket costs can nevertheless receive a $25 cash payment or, if they choose, a $50 credit usable at any authorized Porsche dealership. *Id.*

<u>Simple claim process</u>: To ensure compensation is made readily available, the parties devised a simple claims process. Claims can be filed electronically, and the claim forms will be prepopulated with information including the class member's name, contact information, and vehicle model. Ex. 1 to Settl. Agrm. Class members seeking reimbursement of costs need only provide the total unreimbursed dollar amount and a repair receipt or other document showing the costs. *Id.* For those claiming the $25 payment or $50 dealer credit, no documentation is required; they need only sign their name and aver that they spent time resolving the PCM rebooting. *Id.*

<u>Direct notice to the class</u>: The parties have retained an experienced notice provider, A.B. Data, to administer the proposed settlement. Settl. Agrm. ¶ 10. The

settlement agreement requires A.B. Data to use best practices in disseminating notice to the class. *Id.* ¶¶ 11-14. Notice will be sent via email or postcard notice. *Id.* ¶ 20. Porsche has either an email address or a mailing address for virtually all class members. *Id.* ¶¶ 11, 18, 22.

A.B. Data will also maintain a settlement website with a long-form settlement notice, where class members can learn more and submit their claims. *Id.* ¶¶ 25-27; *see also* Ex. 3 to Settl. Agrm. Class members who are entitled to payment under the settlement can choose their preferred payment option, including via PayPal, Venmo, ACH direct bank deposit, or by check. Settl. Agrm. ¶ 30(a).

## III.   Scope of class members' release of claims.

In exchange for the benefits provided under the settlement, class members will release their claims against Porsche arising out of or related in any way to PCM 3.1 rebooting issues. *Id.* ¶ 61. Plaintiffs have agreed to dismiss the action with prejudice upon final approval of the settlement. *Id.* ¶ 71.

## IV.   Attorneys' fees and litigation costs.

In October 2022, after they had already executed a binding term sheet for the class's relief, the parties engaged in a second mediation with Mr. Loveland to negotiate the issue of attorneys' fees and litigation costs. Counsel's Decl. ¶ 23. While the parties did not reach agreement at the mediation, they eventually agreed

to a double-blind mediator's proposal. *Id.* Per that agreement, Porsche has agreed to pay up to $1,975,000 in attorneys' fees and $75,000 in litigation cost reimbursements. Settl. Agrm. ¶¶ 37-38.

<u>ARGUMENT AND CITATION TO AUTHORITY</u>

"The decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Fed. R. Civ. P. 23(e)(1), Advisory Committee's Notes (2018).

To that end, a court should not preliminarily approve a settlement unless it believes it will likely be able to: (1) "approve the proposal under Rule 23(e)(2)," and (2) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). If the court grants preliminary approval, it must direct notice to the class in a manner consistent with Fed. R. Civ. P. 23(c)(2)(B) and due process. *See Kuhr v. Mayo Clinic Jacksonville*, 530 F. Supp. 3d 1102, 1113 (M.D. Fla. 2021).

On the first point, whether the settlement merits approval, courts are guided by the elements in Rule 23(e)(2). Supplementing those Rule 23(e) elements, are the "*Bennett* factors." *See generally Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see also In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d

1247, 1273-74 (11th Cir. 2021) (affirming district court's application of both Rule 23 and *Bennett* factors).

Below, Plaintiffs explain why the settlement merits approval, under both the Rule 23(e)(2) elements and the *Bennett* factors, before later explaining why the class satisfies the requirements for class certification and the proposed notice plan is sufficient.

## I.     The proposed settlement is fair, reasonable, and adequate under the Rule 23(e)(2) elements.

To assess whether a proposed settlement is fair, reasonable, and adequate, Rule 23(e)(2) directs courts to consider: (1) the adequacy of representation; (2) whether the proposal was negotiated at arm's length; (3) the adequacy of the relief provided by the settlement; and (4) whether the agreement treats class members equitably. *See* Fed. R. Civ. P. 23(e)(2). Each element is addressed in turn.

### A.     Both the Plaintiffs and their counsel have adequately represented the class.

The first factor for consideration under Rule 23(e)(2) is the adequacy of representation by the class representatives and attorneys.

Starting with the class representatives, both Kent Bowen and Kathleen Darnell have faithfully and ably performed their roles representing the class. They actively participated in the years-long litigation, providing relevant information at

counsel's request, and they stayed abreast of litigation developments throughout the case. Counsel's Decl. ¶¶ 12-13.

Plaintiffs' counsel, for their part, have also adequately represented the class. Counsel have considerable experience litigating complex automotive-defect and consumer-protection class actions like this one. *Id.* ¶ 3; *see also* Exs. B, C, D to Counsel's Decl. They deployed that experience here, conducting a thorough initial investigation and pleading a detailed initial complaint. *See* Dkt. 1; Counsel's Decl. ¶¶ 7-8. They successfully opposed Porsche's motion to dismiss, leading to two nationwide claims being sustained. *See* Dkt. 36; Counsel's Decl. ¶ 10. They also engaged in significant formal discovery; negotiated the scope of productions from both the Defendant and a third party; and analyzed the thousands of pages of documents that were produced—including a number of highly technical documents. Counsel's Decl. ¶¶ 13-15. They met and conferred regularly with defense counsel and third-party counsel to work through objections, resolving many disputes cooperatively, while successfully litigating one discovery dispute. *Id.* ¶ 14; *see also* Dkt. 58. Counsel also retained a well-qualified expert to assist in discovery, the review of documents, and for class certification. Counsel's Decl. ¶ 18. And finally, counsel spent dozens of hours in hard-fought negotiations that produced a settlement agreement that provides substantial benefits to class

members—indeed, as much relief as reasonably could be expected if this case had been litigated through trial. *Id.* ¶¶ 25-26.

These efforts required counsel to devote over 2,448 hours to this case, while also advancing tens of thousands of dollars in litigation expenses. *Id.* ¶¶ 27, 29. In light of counsel's "longstanding experience in complex consumer class action litigation," and their "dedicat[ion of] significant resources to this action," the settlement class was adequately represented. *See Pinon v. Daimler AG*, 2021 WL 6285941, at *6 (N.D. Ga. Nov. 30, 2021).

### B. The proposed settlement was negotiated at arm's length.

The second Rule 23(e)(2) element asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). This element is a "procedural" concern, that "look[s] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B), Advisory Committee's Notes. As this Court has noted, Rule 23(e)(2)(B) is satisfied where "the Settlement Agreement was not the product of fraud or collusion." *Pinon*, 2021 WL 6285941, at *7.

Here, there are multiple indicia of the arm's length nature of the negotiations. First, the parties did not begin negotiating until August 2022, after the case had been pending for a year and a half. Counsel's Decl. ¶ 21. By then, the

parties had already engaged in pretrial motion practice, conducted discovery, and were preparing for class certification briefing. *Id.* ¶ 18.

Second, the parties reached a settlement with the assistance of Mr. Loveland as their mediator. *Id.* ¶ 21. "[T]he involvement of a neutral . . . mediator or facilitator in the [the parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2)(A)-(B), Advisory Committee's Notes. "The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator, lends further support to the absence of collusion." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001).

Finally, the nature of the attorney's fee negotiations also shows the non-collusive nature of the settlement. Upon reaching consensus on the proposed class's relief at an initial mediation, the parties deferred the issue of attorneys' fees to a later mediation. Counsel's Decl. ¶ 22. They agreed that while they would try to negotiate fees, even without a fee agreement, they would still present the proposed settlement to the Court. *Id.* The parties then mediated a second time with Mr. Loveland, later agreeing to a double-blind mediators' proposal. *Id.* ¶ 23.

The Court can thus be confident that no aspect of the proposed agreement was "the product of fraud or collusion." *See Pinon*, 2021 WL 6285941, at *7.

**C.      The quality of relief to the class weighs in favor of approval.**

The third Rule 23(e)(2) element asks the Court to assess the adequacy of the settlement's relief for the class. Fed. R. Civ. P. 23(e)(2)(C)-(D), Advisory Committee's Notes. The Court is to consider (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of the proposed methods of distributing relief and processing claims; (3) the terms of any proposed attorneys' fees awards; and finally, (4) any agreements made in connection with the proposal. *See* Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

**1.      The settlement provides strong relief for the proposed class.**

The proposed relief is significant. Most notably, Porsche will be making available full reimbursement of the costs incurred by class members to resolve the PCM rebooting, up to $7,500 per vehicle. This includes not only reimbursement for the PCM replacements (each of which cost thousands of dollars), but also reimbursement for other repairs (including drained-battery replacements). Settl. Agrm. § II(r).

This relief is not merely retrospective. Plaintiffs' counsel has heard from class members whose vehicles continue to suffer ill effects as a result of the PCM rebooting. Counsel's Decl. ¶ 8. Such class members will have over a year from

receiving notice to bring their vehicles to a Porsche dealership for repair, and they too will be entitled to repair reimbursements. Settl. Agrm. ¶ 6.

In addition to repair costs, class members will also be entitled to reimbursement of incidental costs. This includes costs for tow trucks, rental cars, and alternative transportation such as Uber and Lyft. *Id.* § II(r). In short, a wide variety of costs stemming from the PCM rebooting will be fully reimbursed.

This is a strong result that matches what class members may have expected to receive upon winning at trial. *See Wilson v. EverBank*, 2016 WL 457011, at *9 (S.D. Fla. Feb. 3, 2016) (approving claims-made settlement providing "near-complete relief that very likely exceeds what [class members] could have recovered at trial, which is extraordinary for any settlement."). While the settlement caps per-vehicle recovery at $7,500, the parties anticipate this cap will rarely come into play, since even the most expensive repairs (PCM replacements) were typically around $4,000. *See* Counsel's Decl. ¶ 25.

In addition, the settlement recognizes that while many class members were inconvenienced by the PCM rebooting, a sizable portion of the class did not incur out-of-pocket costs because they were able to solve the problem through a free "hard reset" procedure. *Id.* ¶ 17. To ensure these class members too are provided fair compensation, the settlement allows this portion of the class their choice of

$25 in a direct electronic payment (*e.g.*, through Venmo or PayPal) or $50 in the form of a Porsche dealer credit. Settl. Agrm. ¶ 30(a).

The total package of relief being made available, from Plaintiffs' perspective, readily satisfies the Rule 23 standard of fair, reasonable, and adequate. The settlement affords every class member who spent money on PCM rebooting the opportunity to be made whole. It fairly compensates class members who suffered inconvenience, but no economic injury. And it provides prospective relief in the form of repair reimbursements going forward. The strength of the proposed settlement's relief weighs in favor of preliminary approval. *See Wilson*, 2016 WL 457011, at *2 (noting that providing near-complete relief to class members on a claims-made basis" is an "extraordinary" result); *see also Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *20 (S.D. Fla. Apr. 13, 2016) (approving claims-made settlement as "substantively fair, offering complete relief (or better) to every interested Claimant.").

### 2. Continued litigation would entail substantial cost, risk, and delay.

Settlement approval is further warranted because continued litigation would be risky, protracted, and costly. Fed. R. Civ. P. 23(e)(2)(C)(i). The proposed settlement provides essentially complete relief now, avoiding years of continued motion practice, the uncertainty of trial, and subsequent appeals.

Continued litigation would mean re-opening discovery, including expert

discovery, briefing a class certification motion, potentially followed by summary

judgment, *Daubert* motions, and motions in limine, all before the parties would

even reach trial. While a jury could award the class more in damages than they will

receive under the proposed agreement, "such an outcome is far from guaranteed,"

and would only "occur, if at all, after years of protracted litigation, including

appeals." *See Pinon*, 2021 WL 6285941, at *7. Distributing to class members now

relief that is likely equal to (or greater than) what a jury might award years from

now weighs heavily in favor of approval.

> **3.      The settlement agreement provides for a streamlined
> claims process and an effective distribution of
> proceeds to the class.**

Next, the proposed settlement contemplates an efficient and effective claims

process, *see* Fed. R. Civ. P. 23(e)(2)(C)(ii), overseen by A.B. Data, a claims

administrator "highly experienced in administering large class action settlements."

*See Pinon*, 2021 WL 6285941, at *7.

The claims process for class members has been designed to be as simple and

straightforward as possible. To claim reimbursement, class members need only

provide (1) the approximate dates they owned their vehicle; (2) total unreimbursed

expenses they incurred; and (3) a repair receipt or other documentation showing

what they paid. Ex. 1 to Settl. Agrm. Class members who did not incur costs (or who lack documentation of their costs) need only (1) provide the approximate dates they owned their vehicle, (2) confirm they spent some amount of time addressing the rebooting, (3) choose between a $25 payment or $50 dealer credit; and (4) electronically sign the claim form. *Id.* Filing a claim should take just a few short minutes.

Once the settlement is approved, the settlement administrator will provide class members with a choice between Venmo, PayPal, direct deposit, or a paper check to receive payment. Settl. Agrm. ¶ 30(a); *see Pinon*, 2021 WL 6285941, at *7 (approving settlement with check and electronic payment options). The claims and payment process should thus encourage class member participation.

### 4. The terms of the proposed attorneys' fees support preliminary approval.

Nothing about the negotiated attorneys' fee should detract from the fairness of the settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

Plaintiffs will make a detailed fee showing—including by offering expert testimony on the value of the proposed settlement as well as providing their detailed lodestar information—when they file their motion for fees and cost-reimbursements. Counsel's Decl. ¶¶ 28-29. Although that work remains underway, Plaintiffs can foreshadow now that their requested fee and cost payment will be

equal to or less than 33 percent of the proposed settlement's value—well within the typical range in the Eleventh Circuit. *See, e.g.*, *Pinon*, 2021 WL 6285941, at *17 (approving fee valued between 21%-33% of the settlement, noting that "courts within this Circuit have routinely awarded attorneys' fees of *33 percent or more* of the gross settlement fund."); *see also Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (establishing "reasonable percentage of the fund" as the proper method of calculating attorneys' fees in common fund cases); *Poertner v. Gillette Co.*, 618 F. App'x 624, 628 n.2 (11th Cir. 2015) (noting the *Camden I* rule should apply with equal force to claims-made settlements because they are "functional[ly] equivalent.").

For now, in the context of assessing the impact (if any) of the proposed attorneys' fees on preliminary settlement approval, Plaintiffs note that the fees—as with the rest of the settlement—were negotiated at arm's length. As discussed, the parties (with Mr. Loveland's assistance) finalized the material terms of the class-wide relief before ever broaching attorneys' fees, so there is no risk that the fee agreement impacted the nature of the class relief. Counsel's Decl. ¶ 22; *see Pinon*, 2021 WL 6285941, at *7 (granting final approval to class settlement, including proposed fee award, where "the parties negotiated attorneys' fees for Class Counsel only after reaching agreement on the terms of the relief to the Class.").

Moreover, because any fee award will be paid "separate from and in addition to," relief provided to the class, Settl. Agrm. ¶ 37, "[t]he payment of fees does not impact the amount of relief available to the Class Members." *See Pinon*, 2021 WL 6285941, at *7.

### 5.   The parties have no other agreements pertaining to the settlement.

The final factor for consideration under Rule 23(e)(2)(C) is the existence of any agreements required to be identified by Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv). The settlement agreement currently before the Court is the only extant agreement. Counsel's Decl. ¶ 24.

### D.   The settlement treats all settlement class members equitably.

The final element under Rule 23(e)(2) concerns whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways." Fed. R. Civ. P. 23(e)(2)(C)-(D), Advisory Committee's Notes.

Because the available relief is commensurate with the harm suffered by individual Porsche owners, this settlement treats class members equitably. Class

members who spent money on repairs related to PCM rebooting are entitled to reimbursement of the repair cost. Class members who spent money on incidental expenses like towing or alternative transportation are entitled to reimbursement of those costs too. Settl. Agrm. § II(r). Class members whose vehicles still require PCM repairs have the right to obtain reimbursable repairs from Porsche dealers for the year following the Court's final approval hearing. *Id.* ¶ 6. And class members who dealt with rebooting, but incurred no hard costs, may claim either $25 or a $50 dealer credit. *Id.* ¶ 4. Thus, everyone in the class who spent time or money addressing rebooting will be eligible for compensation, with the amount varying based only on the harm incurred.

The fact that relief varies based on the degree of expense incurred is not a detriment—it's a strength. "While class members who have incurred out-of-pocket losses will be able to recover more relative to class members who have not, this allocation is fair and equitable because these class members would have had the ability to seek greater damages at trial." *In re Equifax Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *9 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part, rev'd in part*, 999 F.3d 1247 (applying Rule 23(e)(2)(D)); *see also In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618, at *31 (N.D. Ala. Aug. 9, 2022) ("In the Eleventh Circuit, 'there is no rule that settlements benefit all class

members equally' so long as any differences are 'rationally based on legitimate considerations'") (citation omitted).

Finally, because all class members will provide an identical release of claims, the settlement treats all class members equitably in this regard, further supporting approval of the settlement. Settl. Agrm. § XIV; *see* Fed. R. Civ. P. 23(e)(2)(C)-(D), Advisory Committee's Notes.

## II.   The proposed settlement is fair, reasonable, and adequate under the *Bennett* factors.

In *Bennett v. Behring Corp.*, the Eleventh Circuit articulated the following list of additional factors for approving class settlements:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; . . . [2] and (6) the stage of proceedings at which the settlement was achieved.

737 F.2d at 986. While this analysis overlaps with some of the Rule 23(e)(2) elements, the *Bennett* factors further support approval of the proposed settlement.

---

[2] The fifth *Bennett* factor, "the substance and amount of opposition to the settlement" is not yet ripe for consideration given that notice and the opportunity to opt-out or object has not been issued. *Bennett*, 737 F.2d at 986. This factor will be briefed when Plaintiffs move for final approval.

A. **Plaintiffs' likelihood of success; the complexity, expense, and duration of continued litigation; and the stage at which settlement was achieved all favor preliminary approval.**

The first, fourth, and sixth *Bennett* factors all concern the cost-benefit calculation inherent to settlement and are thus appropriately evaluated together.

Plaintiffs cleared a "substantial hurdle[]" towards success on the merits by defeating Porsche's motion to dismiss as to their trespass to personalty and Computer Fraud and Abuse Act claims. Dkt. 36; *see Pinon*, 2021 WL 6285941, at *8. While Plaintiffs and Class Counsel are confident in their claims, it remains "entirely possible," however, "that Plaintiffs would not prevail" on those claims at class certification, summary judgment, or trial. *Pinon*, 2021 WL 6285941, at *8. Since the proposed settlement will provide near-full relief, it is unclear what upside the class would gain for assuming that additional risk.

This case has already proven to be "complex, expensive, and time-consuming," when considering the technology and parties involved. *See id.* As this Court reasoned in *Pinon*, if the parties continue litigating, they will "have to devote significant time" to expert discovery, class certification briefing, summary judgment motions, and motions to exclude expert testimony, before ever reaching the merits. *See id.* Moreover, even if Plaintiffs were successful at trial months or

even years from now, the case would "likely undergo a protracted appellate

process," during which class members "would be without any remedy." *See id.*

Finally, this case is mature enough that Plaintiffs have been able to "evaluate

the desirability of the settlement as opposed to continuing with the litigation." *See*

*id.* at *9. This Court recently approved a settlement reached at a similar stage of

litigation, noting that "[t]he settlement was not achieved until after a ruling on a

motion to dismiss and after both sides engaged in extensive discovery," as here.

*See id.* Given the stage of the litigation and the favorability of the settlement

currently before the Court, preliminary approval is warranted under the first,

fourth, and sixth *Bennett* factors.

> ### B. The range of possible recovery and the point at which the settlement is fair, reasonable, and adequate, favor preliminary approval.

The second and third *Bennett* factors compare the proposed relief against the

range of possible recovery. Here, Plaintiffs believe they have recovered what they

may reasonably have hoped to recover at trial. The settlement accounts for the

expenses class members incurred, offers to reimburse those expenses in full with a

cap that is so generous it is unlikely to affect many (if any) class members, and

also compensates those class members who suffered nothing but a loss of time or

inconvenience—a challenging harm to remedy in class cases. *See* Counsel's Decl. ¶¶ 25-26.

Since "courts regularly find settlements to be fair even where '[p]laintiffs have not received the optimal relief,'" the Court should preliminarily approve this proposed settlement, which provides meaningful, comprehensive, and near-optimal relief. *See Pinon*, 2021 WL 6285941, at \*9 (citation omitted).

### C.   The judgment of class counsel favors preliminary approval.

While not an enumerated *Bennett* factor, this Court and others in the Eleventh Circuit afford great weight to the judgment of class counsel in reaching a proposed class settlement. *Id.* at \*10 ("[I]n a case where experienced counsel represent the class, the Court 'absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel'"); *see also Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (same). Here, Plaintiffs' counsel are experienced automotive-defect and consumer-protection litigators. Based on their experience and knowledge of this case, they have concluded that the settlement is a strong result for the class. Counsel's Decl. ¶ 4. The Court may consider counsel's "judgment that the benefits of this settlement far outweigh the delay and considerable risk of proceeding to trial." *Pinon*, 2021 WL 6285941, at \*10 (citing *Ingram*, 200 F.R.D. at 691).

**III.    This Court should preliminarily certify the Settlement Class because it meets all requirements of Rule 23(a) and (b).**

As was noted above, before granting preliminary settlement approval, the Court must also determine that it will likely be able to certify the proposed settlement class. Fed. R. Civ. P. 23(e)(1)(B)(ii).

This requires a finding that the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—are met. Plaintiffs must also establish one of the three requirements of Rule 23(b). Relevant here, under Rule 23(b)(3), certification is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members, and [where] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In addition, the parties "must establish that the proposed class is adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (internal quotations and citations omitted).

As a threshold matter, every member of the proposed settlement class for whom damages are being made available has standing. *See Drazen v. Pinto*, 41 F.4th 1354, 1360 (11th Cir. 2022). By definition, every member of the proposed class owned or leased a vehicle that received the software update that led to the rebooting cycles. Settl. Agrm. §§ II(dd), II(h). As plaintiffs have alleged, that

update constituted a trespass to the vehicle of every settlement class member because it intruded onto their property without consent. Therefore, each class member suffered a harm that is concrete, particularized, and directly analogous to (in fact, *is*) an injury that historically existed at common-law—the unauthorized intrusion upon personal property. *See, e.g.*, *Drazen*, 41 F.4th at 1362-63. In addition, class members will not receive compensation absent a showing that they incurred an injury in the form of having spent money and/or time resolving PCM 3.1 rebooting. All members of the settlement class therefore have standing to obtain the relief that the settlement agreement provides.

### A.   The Settlement Class meets the requirements of Rule 23(a).

### 1.   The Settlement Class is ascertainable.

Before reaching the enumerated pre-requisites of Rule 23(a), this Court must further determine that the "proposed class is adequately defined and clearly ascertainable." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) (internal quotations omitted). "[A] proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Id.* at 1304. "A class is inadequately defined if it is defined through vague or subjective criteria." *Id.* at 1302.[3]

---

[3] In *Cherry*, the Eleventh Circuit joined the Second, Sixth, Seventh, Eighth, and

Here, the parties' settlement defines the settlement class as "all entities and individuals in the United States who, as of May 20, 2020, owned or leased an Eligible Vehicle." Settl. Agrm. § II(dd). "Eligible Vehicle" is defined as "a Porsche vehicle equipped with an XM radio antenna and Porsche Communication (PCM) system 3.1." *Id.* § II(h). These definitions use clear and objective criteria that allow this Court to determine who is a member of the settlement class. Porsche maintains records indicating which vehicles were equipped with a PCM 3.1 and who the owners or lessees were for those vehicles. *See id.* ¶¶ 16, 22. As a result, the settlement class satisfies the *Cherry* ascertainability standard.

### 2. The settlement class is sufficiently numerous.

Next, the Court must consider each of the enumerated requirements in Rule 23(a). The first of those requirements is that the settlement class is sufficiently numerous "that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[W]hile there is no fixed numerosity rule,' classes of more than forty members presumptively satisfy numerosity." *Pizarro v. Home Depot, Inc.*, 2020 WL 6939810, at *7 (N.D. Ga. Sept. 21, 2020) (quoting *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986)).

---

Ninth Circuits in holding that the ascertainability inquiry does not include an administrative feasibility requirement. *Cherry*, 986 F.3d at 1302.

Based on information received in discovery, there are roughly 200,000 PCM 3.1-equipped vehicles. *See* Counsel's Decl. ¶ 16. Even if not all of those vehicles remained in operation on May 20, 2020, there are more than a sufficient number of Class Members to satisfy numerosity. *See M.H. v. Berry*, 2017 WL 2570262, at *4 (N.D. Ga. June 14, 2017) (courts may rely on a "common sense assumption to support a finding of numerosity"). As a result, the settlement class satisfies the numerosity requirement.

### 3. There are questions of fact and law common to the settlement class.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is a "low hurdle" because it requires only "that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355–56 (11th Cir. 2009). "The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 656, 668 (S.D. Fla. 2015) (internal quotations and citations omitted). Such is the case here. The settlement class's claims are all rooted in common factual and legal issues: whether a May 2020 update was sent to class members' vehicles, whether the update came without the consent of the class, and whether the update

caused PCMs to enter a rebooting cycle. These issues are central to each of the claims in this case and common to the class.

### 4. The class representatives' claims are typical of the Settlement Class.

The class representatives also meet Rule 23(a)(3)'s requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A representative plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and his or her claims are based on the same legal theory." *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 690 (N.D. Ga. 2003) (internal quotations and citation omitted). "Like commonality, the test for typicality is not demanding." *In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645, 653 (S.D. Fla. 2012) (citation omitted).

Both the class members and the class representatives all complain of the same kind of injury "from the same event or pattern or practice"— *i.e.*, they all had PCM 3.1 systems that were subject to the rebooting problems, stemming from a single incident related to the May 2020 update. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("[P]laintiffs clearly present claims typical of the class. The cause of action arises from a single event and there is no variation in legal theory.").

- 32 -

**5.     The class representatives and class counsel are adequate to protect the interests of the settlement class.**

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class," and Rule 23(g) requires this Court to appoint adequate counsel to represent the class. Fed. R. Civ. P. 23(a)(4) & (g). "To adequately represent a class, a named plaintiff must show that she possesses the integrity and personal characteristics necessary to act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class." *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 540 (S.D. Fla. 2015). With respect to appointment of class counsel, this Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

*Id.* at 542. As discussed above, class counsel and the class representatives have adequately represented the class, satisfying this requirement. *See supra* Part I.A.

**B.    The Settlement Class meets the requirements of Rule 23(b).**

In addition to meeting the requirements of Rule 23(a), the settlement class

also satisfies the criteria in Rule 23(b)(3) and the requirements of 23(b)(2) with

respect to the non-monetary aspects of the settlement.

**1.    The Settlement Class satisfies Rule 23(b)(3) because common issues of law and fact predominate.**

The "predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v.

Windsor*, 521 U.S. 591, 623 (1997). It "asks whether the common, aggregation-

enabling, issues in the case are more prevalent or important than the non-common,

aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577

U.S. 442, 453–54 (2016). In the Eleventh Circuit, the predominance inquiry is

"customarily applied . . . on a claim-by-claim basis." *Battle v. Liberty Nat'l Life

Ins. Co.*, 770 F. Supp. 1499, 1516 n.48 (N.D. Ala. 1991), *aff'd* 974 F.2d 1279 (11th

Cir. 1992).

The operative complaint raises two claims—trespass to personalty, and

violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. As to the

CFAA claim, Plaintiffs must show "that [a defendant] has (1) intentionally

accessed (2) a protected computer (3) without authorization, and (4) as a result of

such conduct, has (5) intentionally, recklessly or otherwise caused (6) damage."

Dkt. 36, at 7 (quoting *FERCO Enters., Inc. v. Taylor Recycling Facility LLC*, 2007 WL 9701361, at *30 (N.D. Ga. Oct. 16, 2007), *aff'd*, 291 F. App'x 304 (11th Cir. 2008)). Whether Porsche intentionally accessed the PCM through an update, whether Porsche had consent to access the PCMs through that update, and whether the update caused PCMs to enter a rebooting cycle are, in Plaintiffs' view, all common questions, subject to proof that would apply to all class members. Indeed, the only element of the CFAA claim that is arguably subject to individualized consideration is the extent of each class member's damages, which generally is not an impediment to a finding of predominance. *See Curriuolo v. GM Co.*, 823 F.3d 977, 988 (11th Cir. 2016) ("[I]ndividualized damages calculations are insufficient to foreclose the possibility of class certification, especially when, as here, the central liability question is so clearly common to each class member.").

Likewise, with the trespass to personalty claim, Plaintiffs must prove that Defendant (1) interfered with personal property, (2) that belonged to the plaintiff (3) without the plaintiff's consent. *See* Dkt. 36 at 22–23 (citing *Caldwell v. Church*, 341 Ga. App. 852, 856–57 (2017)). In Plaintiffs' view, the reasoning in the Court's Order on Porsche's motion to dismiss implies that both the question of whether the transmission constituted a trespass and whether drivers implicitly

consented to that transmission, raise questions of law that would be well-suited to answering on a class-wide basis. *See generally* Dkt. 36 at 9-13; 21-26.

With common questions that can be answered on a class-wide basis, the proposed settlement class meets the predominance requirement.

### 2. Class-wide settlement is the superior method for resolving the claims at issue in this case.

Finally, class treatment here is superior, especially in the context of a settlement. "[T]he superiority requirement of Rule 23(b)(3) turns on whether a class action is better than other available methods of adjudication." *Cherry*, 986 F.3d at 1304; *see also Lewis v. ARS Nat'l Servs., Inc.*, 2011 WL 3903092, at *4 (M.D. Ala. Sept. 6, 2011) ("Certification under 23(b)(3) is often appropriate for cases in which individual damages are low, thereby providing little incentive for individual suits." (citing *Amchem*, 521 U.S. at 617)).

Many class members here are likely to have claims worth only a few thousand dollars, with a significant number of class members having suffered essentially nominal damages. Losses of this magnitude are not economically rational to bring as individual claims, as demonstrated by the fact that the parties are aware of no individual actions having been filed in connection with the May 20, 2020, incident. Counsel's Decl. ¶ 8. As such, resolving the claims of all class

members in a single action is superior to relying on (currently theoretical) individual suits.

Further, manageability concerns are not relevant to settlement. As the Supreme Court has held, in the settlement context, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. In short, any concerns over the manageability of a nationwide class are not relevant to the resolution of this motion, as Plaintiffs are seeking certification of a settlement class, and the Court will not be tasked with managing a trial.

\* \* \*

For the reasons set forth above, the settlement class meets all criteria of Rule 23(a) and Rule 23(b), and the Court should preliminarily find that certification of the settlement class is appropriate.

## IV.   The Court should approve the form and plan for disseminating notice to the class members.

Following preliminary approval, Rule 23(e)(1) requires that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). That notice "must contain information reasonably necessary to make a decision to remain a class member and be bound

by the final judgment or opt out of the action." *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 254 (11th Cir. 2009) (internal quotations omitted).

**A.      The Court should adopt the parties' proposed notice program.**

The parties' proposed notice plan—which was developed in conjunction with A.B. Data, a legal notification firm with extensive experience designing large-scale legal notification plans—meets the criteria of Rule 23. Settl. Agrm. § VI. The proposed summary notices and long-form notice would be in substantially the same form as Exhibits 2-4 to the Settlement Agreement. The summary notice will inform settlement class members of, among other things: the nature of this case and the Plaintiffs' claims; the terms of the proposed settlement; how to make a claim for benefits of the settlement, if it is approved; how to object to the settlement or opt out of the class; the existence of class counsel and the provision for payment of attorneys' fees in the settlement; the hearing this Court will hold for final approval of the settlement; and how class members can obtain a long-form notice with more detailed information about the settlement. *See* Exs. 2, 3, 4 to Settl. Agrm. The proposed notices provide sufficient information to allow class members to determine how to proceed with respect to the settlement and to meet the requirements of due process.

Further, the parties' proposed plan for distributing notice will ensure that as many potential class members as possible will receive notice of the settlement. Email notices (with follow-up reminders) will be sent to those class members for whom Porsche has an email address. *See* Fed. R. Civ. P. 23(c)(2)(B) Advisory Committee's Notes (amending permissible forms of notice in Rule 23(b)(3) class actions to include electronic notice). For the remaining class, postcard notices will be mailed. A.B. Data will also update those addresses using the National Change of Address database and remail returned postcards if a forwarding address is provided or can be traced using national databases like Experian. Settl. Agrm. ¶ 22. Because Porsche possesses records for "substantially all" class members, the parties are confident that this notice program will reach the overwhelming majority of class members. *See id.*

The parties respectfully submit that the notice plan described in the settlement agreement and Exhibits 2-4 thereto constitutes the best practicable notice under the circumstances, satisfies due process and all other applicable requirements, and should be approved.

**B.     The Court should adopt the proposed settlement schedule.**

Finally, the parties request that this Court set the following proposed schedule for disseminating notice and holding a final approval hearing:

| Event | Deadline |
|---|---|
| Deadline for disseminating class notice | 30 days after order granting preliminary approval |
| Deadline for Plaintiffs' motion seeking final settlement approval and award of attorneys' fees and cost reimbursements | 51 days before final approval hearing |
| Deadline for class members to object or opt out of settlement | 30 days before final approval hearing |
| Deadline for replies in support of final approval motion | 14 days before final approval hearing |
| Final approval hearing | At least 105 days after order granting preliminary approval |

## <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court preliminarily approve the settlement the parties have reached. A proposed order doing so is attached as Exhibit 5 to the Settlement Agreement.

Respectfully submitted this 11th day of January, 2022.

By: */s/ Matthew R. Wilson*_____
Matthew R. Wilson (*pro hac vice*)
mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice*)
mboyle@meyerwilson.com
MEYER WILSON CO., LPA
305 West Nationwide Boulevard
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*/s/ T. Brandon Waddell*
Michael A. Caplan
Georgia Bar No. 601039
T. Brandon Waddell
Georgia Bar No. 252639
CAPLAN COBB LLP
75 Fourteenth Street, NE, Suite 2750
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
bwaddell@caplancobb.com

*/s/ David Stein*
David Stein (*pro hac vice*)
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ds@classlawgroup.com

*Counsel for Plaintiffs and the Proposed
Class*

- 41 -

## **LOCAL RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that the foregoing document has been prepared with one of the font and point selections approved by the Court in LR 5.1(B).

This 11th day of January, 2023.

*/s/ T. Brandon Waddell*
T. Brandon Waddell
bwaddell@caplancobb.com

*Counsel for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 11th day of January, 2023.

*/s/ T. Brandon Waddell*
T. Brandon Waddell
bwaddell@caplancobb.com

*Counsel for Plaintiffs and the Proposed Class*