# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| KENT BOWEN and KATHLEEN DARNELL on behalf of themselves and all others similarly situated, | Case No. 1:21-CV-471-MHC |
| Plaintiffs, | |
| v. | |
| PORSCHE CARS, N.A., INC. | |
| Defendant. | |

## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iv

INTRODUCTION ............................................................................................. 1

BACKGROUND ............................................................................................... 4

I.  Factual background. ................................................................................. 4

II.  Procedural history.................................................................................... 5

OVERVIEW OF THE SETTLEMENT ............................................................. 7

I.  The proposed settlement class. ................................................................ 7

II.  The relief for the settlement class............................................................ 8

III.  Scope of class members' release of claims. ............................................. 11

IV.  Attorneys' fees and litigation costs. ......................................................... 11

ARGUMENT AND CITATION TO AUTHORITY ......................................... 12

I.  The Court Should Grant Final Approval to the Settlement........................ 12

   A.  The settlement is fair, reasonable, and adequate
       under the Rule 23(e)(2) elements. ..................................................... 14

       1.  Both the Plaintiffs and their counsel have
           adequately represented the class. ........................................... 14

       2.  The settlement was negotiated at arm's length. ...................... 16

       3.  The quality of relief to the class weighs in
           favor of approval.................................................................... 18

           i.  The settlement provides strong relief
               for the class.................................................................. 18

ii. Continued litigation would entail substantial cost, risk, and delay. ..................................................... 20

iii. The settlement provides a streamlined claims process and an effective distribution of proceeds to the class. ................................................... 21

iv. The terms of the proposed attorneys' fees support final approval. ................................................... 22

v. The parties have no other agreements pertaining to the settlement. ........................................................ 23

4. The settlement treats all settlement class members equitably .................................................................... 23

B. The settlement is fair, reasonable, and adequate under the *Bennett* factors. .............................................................. 25

1. Plaintiffs' likelihood of success; the complexity, expense, and duration of continued litigation; and the stage at which settlement was achieved all favor final approval. ......................................................... 25

2. The range of possible recovery and the point at which the settlement was reached is fair, reasonable, and adequate, favor approval. ......................................................... 27

3. Plaintiffs will address the reaction of class members in its reply brief. .......................................................... 28

II. The Court should approve Plaintiffs' requested attorneys' fees and litigation-cost reimbursements. ...................................................... 28

A. Plaintiffs' requested fee award is presumptively reasonable under the percentage-of-the-fund method. ........................................ 29

B.  Class Counsel's requested fee is also reasonable under
    the *Camden* factors. ............................................................... 32

    1.     The time and labor required. ..................................................... 33

    2.     The novelty and difficulty of the relevant questions. .............. 34

    3.     The skill required to perform the services and the
         experience, reputation, and ability of Class Counsel. .............. 35

    4.     The preclusion of other employment. ...................................... 36

    5.     The customary fee and whether it is fixed or contingent. ........ 36

    6.     The amount involved and the results obtained. ....................... 37

    7.     Awards in similar cases. ........................................................... 38

C.  Class Counsel's requested fee is also reasonable under
    a lodestar cross-check. ......................................................... 39

D.  The Court should approve Class Counsel's request for
    reimbursement of their reasonable costs. .......................................... 39

CONCLUSION ............................................... 40

# TABLE OF AUTHORITIES

**Cases**

*Amin v. Mercedes-Benz USA, LLC*,
  2020 WL 5510730 (N.D. Ga. Sept. 11, 2020) .................................................... 40

*Arkin v. Pressman, Inc.*,
  38 F.4th 1001 (11th Cir. 2022)..................................................................... 28, 33

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984)............................................................................ 13

*Braynen v. Nationstar Mortg., LLC*,
  2015 WL 6872519 (S.D. Fla. Nov. 9, 2015)...................................................... 22

*Burrow v. Forjas Taurus S.A.*,
  2019 WL 4247284 (S.D. Fla. Sept. 6, 2019)..................................................... 14

*Cabot East Broward 2 LLC v. Cabot*,
  2018 WL 5905415 (S.D. Fla. Nov. 9, 2018)...................................................... 37

*Camden I Condominium Association v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991)........................................................... 3, 29, 30, 33

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  258 F.R.D. 545 (N.D. Ga. 2007) ........................................................................ 12

*Diakos v. HSS Sys., LLC*,
  137 F. Supp. 3d 1300 (S.D. Fla. 2015)............................................................... 13

*Dierkes v. Crawford Orthodontic Care, P.C.*,
  284 Ga. App. 96 (2007)...................................................................................... 27

*Fruitstone v. Spartan Race, Inc.*,
  2021 WL 2012362 (S.D. Fla. May 20, 2021) .................................................... 30

*George v. Acad. Mortg. Corp. (UT)*,
  369 F. Supp. 3d 1356 (N.D. Ga. 2019) ......................................................... 16, 17

*Gunthert v. Bankers Standard Ins. Co.*,
  2019 WL 1103408 (M.D. Ga. Mar. 8, 2019) ...................................................... 36

*In re Blue Cross Blue Shield Antitrust Litig.*,
  2022 WL 4587618 (N.D. Ala. Aug. 9, 2022)..................................................... 24

*In re Equifax Customer Data Sec. Breach Litig.*,
  999 F.3d 1247 (11th Cir. 2021).......................................................... 13

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020)................................................ 24, 37

*In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  2023 WL 2284684 (S.D. Fla. Feb. 28, 2023)..................................................... 30

*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992)............................................................. 12

*Montoya v. PNC Bank, N.A.*,
  2016 WL 1529902 (S.D. Fla. Apr. 13, 2016)..................................................... 20

*Pinon v. Daimler AG*,
  2021 WL 6285941 (N.D. Ga. Nov. 30, 2021)............................................. passim

*Pledger v. Reliance Tr. Co.*,
  2021 WL 2253497 (N.D. Ga. Mar. 8, 2021)................................................ 29, 39

*Poertner v. Gillette Co.*,
  618 F. App'x 624 (11th Cir. 2015)......................................................... 29

*Reyes v. AT&T Mobility Servs., LLC*,
  2013 WL 12219252 (S.D. Fla. June 21, 2013) .................................................. 38

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
  297 F.R.D. 683 (S.D. Fla. 2014) ......................................................... 30

*Venerus v. Avis Budget Car Rental, LLC*,
  2022 WL 18495246 (M.D. Fla. Dec. 14, 2022) ........................................... 29, 32

*Wilson v. EverBank*,
  2016 WL 457011 (S.D. Fla. Feb. 3, 2016) ..................................................... 19, 20

**Statutes**

18 U.S.C. § 1030 ........................................................................................... 5

**Other Authorities**

Rubenstein, Newberg on Class Actions (5th ed. 2015) .................................... 12, 30

Scott T. Lashway & Matthew M.K. Stein, *Signs Inscribed on A Gate: The Impact of* Van Buren v. United States *on Civil Claims Under the Computer Fraud and Abuse Act*,
  44 W. New Eng. L. Rev. 109 (2022) .............................................................. 34

**Rules**

Fed. R. Civ. P. 23 ............................................................................ passim

**<u>INTRODUCTION</u>**

This case stems from problems with the "Porsche Communication Management" or "PCM" system in vehicles across the country. The PCM is the infotainment system that controls satellite radio, navigation, and the like. Beginning in May 2020, many Porsche drivers complained that their PCMs had begun entering constant rebooting cycles. The PCMs were rebooting over and over, while emitting loud static noise, rendering them non-functional until repairs were performed. For some drivers, the repairs were quick and came at no direct cost, other than the time and inconvenience associated with the repair; but in other instances, PCM repairs cost $4,000 or more.

After two years of hard-fought litigation over the PCM malfunction, the parties reached a class settlement. The proposed settlement makes compensation available to everyone in the proposed settlement class who spent time or money addressing the PCM rebooting. The settlement provides *full* reimbursement of out-of-pocket costs incurred for repairing a PCM, up to $7,500 per vehicle. Porsche owners who have not yet succeeded in obtaining satisfactory repairs may do so now and be reimbursed for their expenses. And those class members who were able to resolve their PCM rebooting without having to pay out of pocket will be

eligible for payment to compensate for the inconvenience of resolving the problem; they will have their choice of $25 in cash or a $50 dealership credit.

The parties first presented this proposed settlement to the Court earlier this year for preliminary approval. At that time, pursuant to Rule 23(e)(1), they asked the Court to find that it would likely (i) approve the settlement, and (ii) certify a settlement class. The Court agreed, made those findings, and directed the dissemination of notice to the proposed nationwide settlement class.

Pursuant to the Court's order of February 22, 2023 (Dkt. No. 73), notice went out to class members via mail and email. The reaction from the class has been overwhelmingly positive to date: As of April 24, 2023, no class member objects to the settlement, only two have attempted to opt out,[1] and 4,357 have submitted claims for compensation. Counsel's Final Approval Decl. ¶ 7. Plaintiffs will file an update once the deadline for objections and opt outs has passed, but the class's reaction thus far confirms the strength of the settlement, which approaches—and in some aspects may exceed—the compensation that may have been obtainable after

---

[1] Porsche has taken the position that these two requests do not conform to the requirements to opt-out set forth in the Settlement Agreement. Both individuals have been contacted by the Settlement Administrator and provided an opportunity to cure. *See* Ex. A, Joint Declaration of Class Counsel in support of this motion ("Counsel's Final Approval Decl.") ¶ 8.

a successful trial. With class notice having been delivered, and the class showing its approval, Plaintiffs now formally request that the Court grant final settlement approval.

In addition, with the litigation coming to an end, Class Counsel also request to be compensated for their effort in achieving this result for the class. This case featured hard-fought litigation, including motion-to-dismiss briefing, discovery obtained from both Defendant and a third party, a contested discovery motion, and expert work. As a result, Class Counsel have devoted over 2,500 hours to prosecuting the case, while advancing approximately $75,000 in out-of-pocket litigation costs. Class Counsel have undertaken these efforts and incurred these costs on a purely contingent basis. Class Counsel request reimbursement of their actual out-of-pocket expenses as well as attorneys' fees in the amount of $1,975,000, which is consistent with Eleventh Circuit fee jurisprudence in that it would provide a lodestar multiplier of just 1.26 and deliver less than the 25% benchmark for fees recognized in *Camden I Condominium Association v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). Given the work undertaken, the inherent risk in prosecuting the case, and the strong result delivered, Class Counsel believe the request fairly compensates them for their efforts and should therefore be approved.

## BACKGROUND

### I.    Factual background.

In late May 2020, Porsche owners around the country began experiencing problems with their vehicles' PCM infotainment systems. Dkt. 40. As noted above, the PCM controls information, communication, and entertainment functions—including navigation, satellite radio, telephone, and sound settings. *Id.* ¶¶ 19-20.

Owners complained that, while their PCMs had previously been working fine, around May 2020 the units began entering a near-constant rebooting cycle—turning on and off every few minutes in a continuous loop. *See id.* ¶ 32 (collecting complaints from Porsche drivers posted on various online forums). Drivers reported that their PCMs were inoperative, eliminating access to the entertainment and navigation systems. *Id.* ¶ 28. While rebooting, the PCMs emitted a loud, unpleasant static noise. *Id.* At times, the reboot cycle continued even when the vehicles were not in use. Some Porsche owners reported that their car batteries had drained overnight because of the rebooting. *See, e.g.*, *id.* ¶¶ 44, 53.

Shortly after the problems began, it was suspected that the cause had been a remote software update transmitted to the PCMs—allegedly sent by Porsche directly or with Porsche's help. *Id.* ¶¶ 24-25. Yet, Plaintiffs allege, Porsche chose not to offer compensation to all affected owners. *Id.* ¶ 33. This meant, for example,

that when owners paid to replace the PCM, at an average cost of about $4,000, Porsche did not reimburse those repair costs—nor did it instruct its dealers to cover the replacements under warranty. *Id.* In addition to repair costs, some drivers were without use of their vehicles for several days or weeks, which meant drivers were forced to spend money on rental cars, Uber/Lyft rides, and the like. *Id.* ¶ 84.

Plaintiffs Kent Bowen and Kathleen Darnell were among the Porsche owners affected. Mr. Bowen paid several thousand dollars to replace his vehicle's PCM, while Ms. Darnell paid over a thousand dollars to repair the PCM and replace the battery in her car. *Id.* ¶¶ 41-48; 50-59.

## II.    Procedural history.

Mr. Bowen filed suit on January 29, 2021, and Ms. Darnell joined the case later that year. Dkts. 1; 39. Plaintiffs alleged that Porsche either sent or helped send the software update that caused the PCMs to malfunction. Dkt. 40 ¶¶ 24-25.

Plaintiffs brought four claims, including for trespass to personalty and for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. *Id.* ¶¶ 71-85. They also requested that the Court certify a class under Rule 23(b)(3). *Id.* ¶¶ 60-70.

Over the past two years, the parties have vigorously litigated Plaintiffs' claims. In February 2021, Porsche moved to dismiss the complaint, Dkt. 14, which Plaintiffs opposed. Dkt. 21. On September 20, 2021, the Court granted Porsche's

motion in part, dismissing the counts for negligence and unjust enrichment. Dkt. 36. At the same time, the Court permitted Plaintiffs' trespass and CFAA claims to proceed and also agreed with Plaintiffs that Georgia common law governed Plaintiff's trespass claim even though he had purchased his vehicle (and experienced the PCM rebooting) outside of Georgia. *See id.* at 15-21.

The parties then engaged in discovery. Plaintiffs served two sets of requests for production of documents, along with a set of interrogatories. Dkt. 71-1 ¶ 13 (Joint Declaration of Plaintiffs' Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement) (hereinafter "Counsel's Prelim. Approval Decl."). Counsel then met and conferred repeatedly to negotiate the scope of Porsche's responses and production. *Id.* ¶ 14. One discovery dispute concerning Porsche's response to an interrogatory was brought to the Court for resolution in May 2022. Dkts. 58; 59.

Plaintiffs also served a third-party subpoena on Sirius XM—the other entity suspected to have been involved in transmitting the May 2020 update, and negotiated a document production. Counsel's Prelim. Approval Decl. ¶ 15. Plaintiffs then reviewed the thousands of documents produced by Porsche and Sirius, working alongside their technical expert to prepare for upcoming depositions and class certification. *Id.* ¶ 18.

All the while, Porsche consistently denied liability and vigorously defended itself against the suit. *Id.* ¶ 9. The parties were preparing for—but did not ultimately reach—the class-certification stage when they agreed to mediate.

On August 9, 2022, the parties mediated with the assistance of Joseph Loveland of JAMS. *Id.* ¶ 21. Following the mediation, and over the course of several weeks with Mr. Loveland's continued assistance, the parties executed a binding term sheet with the material terms of the class-wide relief. *Id.* The parties did not negotiate attorneys' fees and litigation costs at the August 2022 mediation, instead returning to conduct another mediation with Mr. Loveland on that issue in October 2022. *Id.* ¶¶ 22-23. After reaching agreement regarding fees and costs, the parties spent several weeks negotiating the details of a comprehensive settlement agreement memorializing the terms on which they have agreed to resolve this case.

<u>**OVERVIEW OF THE SETTLEMENT**</u>

**I.     The proposed settlement class.**

The details of the parties' proposed class settlement are reflected in the settlement agreement, filed at Dkt. No. 71-2. The parties' settlement agreement defines the settlement class as: "[A]ll entities and individuals in the United States who, as of May 20, 2020, owned or leased an Eligible Vehicle."[2] Settl. Agrm.

---

[2] Excluded from the Class are Defendant, any Released Persons, Class Counsel,

§ II(dd). "Eligible Vehicle," in turn, is defined to include any Porsche vehicle equipped with an XM radio antenna and PCM 3.1 (which is the sole PCM model impacted by the rebooting at issue). *Id.* § II(h).

## II. The relief for the settlement class.

The proposed settlement provides numerous benefits to the class.

*Reimbursement of costs*: First, Porsche has agreed to reimburse any class members who spent money in connection with resolving PCM rebooting. Class members are entitled to reimbursement for PCM replacements, PCM repairs, battery replacements, and any other vehicle repair related to the rebooting. *Id.* ¶ 4.

Class members whose vehicles required repairs will also be entitled to reimbursement of their incidental expenses. This includes costs associated with towing the vehicles (given that some owners reported dead batteries), rental cars (for those owners who were without the use of their vehicle during the repair period), and related costs like Uber or Lyft rides. *Id.*

The settlement provides a ceiling for these reimbursements of $7,500 per vehicle. *Id.* But since this cap well exceeds the average cost of a PCM replacement ($4,000), Plaintiffs anticipate the cap will impact few (if any) class members.

---

and the Court, as well as the Court's spouse, and any person within the third degree of relationship to either of them.

Counsel's Prelim. Approval Decl. ¶ 25. Class members will be reimbursed only to the extent they have not already previously been reimbursed for their out-of-pocket expenses and are able to substantiate their expenses with easy-to-produce documentation, like receipts reflecting the costs they incurred. Settl. Agrm. § II(r) & § IV(4).

*Ongoing relief*: The settlement also covers Porsche owners whose vehicles continue to experience problems (or who may experience problems). Under the settlement, reimbursement remains available for PCM repairs *for twelve months* following the final approval hearing. *Id.* ¶ 6. That ensures that all affected owners have more than enough time to conduct any needed repairs that have not yet been performed and still receive benefits under the settlement. The notices inform class members that if they still need PCM-rebooting-related repairs, they should visit an authorized Porsche dealership, where their costs will be reimbursable. *See* Exs. 2, 3, 4 to Settl. Agrm.

*Compensation for time spent*: The settlement also accounts for the fact that many class members still had to spend time and effort to rectify the issues caused by the update even where they were able to benefit from a free "hard reset" repair offered by Porsche dealerships or take some other step to resolve the issue that did not require them to incur hard costs. To ensure all class members have the

opportunity to benefit from the settlement, the settlement includes a "floor" to provide a minimum level of compensation to these individuals. *See* Settl. Agrm. ¶ 4. Any class member who spent any time addressing the issue, but does not claim reimbursement of out-of-pocket costs, can receive a $25 cash payment or, if they choose, a $50 credit usable at any authorized Porsche dealership. *Id.*

*Simple claim process*: To ensure compensation is readily available to class members, the parties devised a simple claims process. Claims can be filed electronically, and the claim forms are prepopulated with information including the class member's name, contact information, and vehicle model. Ex. 1 to Settl. Agrm. Class members seeking reimbursement of costs need only provide the total unreimbursed dollar amount and a repair receipt or other document showing the costs. *Id.* For those claiming the $25 payment or $50 dealer credit, no documentation is required; they need only sign their name and aver that they spent time resolving the PCM rebooting. *Id.*

*Notice to the class*: The parties have retained an experienced notice provider, A.B. Data, to administer the settlement. Settl. Agrm. ¶ 10. The settlement agreement required A.B. Data to use best practices in disseminating notice to the class, *id.* ¶¶ 11-14, which has been sent by email or postcard. *Id.* ¶ 20. Porsche has an email or mailing address for substantially all class members. *Id.* ¶¶ 11, 18, 22.

A.B. Data is also maintaining a settlement website, accessible at https://www.porschepcmsettlement.com/ where class members can learn more about the case and the settlement and electronically submit their claims. *Id.* ¶¶ 25-27; *see also* Ex. 3 to Settl. Agrm. In addition to copies of the complaint, answer, and this Court's order on Porsche's motion to dismiss, the settlement website also provides class members with copies of the settlement agreement, the long form notice, and this Court's preliminary approval order. Class members who are entitled to payment under the settlement can choose their preferred payment option, including via PayPal, Venmo, ACH direct bank deposit, or by check. Settl. Agrm. ¶ 30(a).

## III. Scope of class members' release of claims.

In exchange for the benefits provided under the settlement, class members will release their claims against Porsche arising out of or related in any way to PCM 3.1 rebooting issues. *Id.* ¶ 61. Plaintiffs have agreed to dismiss the action with prejudice upon final approval of the settlement. *Id.* ¶ 71.

## IV. Attorneys' fees and litigation costs.

In October 2022, after they had already executed a binding term sheet for the class's relief, the parties engaged in a second mediation with Mr. Loveland to negotiate attorneys' fees and litigation costs. Counsel's Prelim. Approval Decl.

¶ 23. While the parties did not reach agreement at the mediation, they eventually agreed to a double-blind mediator's proposal. *Id.* Per that agreement, Porsche has agreed not to oppose Plaintiffs' request for $1,975,000 in attorneys' fees and up to $75,000 in litigation cost reimbursements. Settl. Agrm. ¶¶ 37-38.

## <u>ARGUMENT AND CITATION TO AUTHORITY</u>

**I.** **The Court Should Grant Final Approval to the Settlement.**

The "law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals." Rubenstein, Newberg on Class Actions § 13:44 (5th ed. 2015); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558 (N.D. Ga. 2007) ("In reviewing proposed settlements, courts should also bear in mind the judicial policy favoring settlements.").

Rule 23(e) provides that a court "may approve" a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When a court certifies a class at the same time as approving a settlement, the court must find the four prerequisites of Rule 23(a) satisfied, as well

as one of the requirements under Rule 23(b). *Diakos v. HSS Sys., LLC*, 137 F.

Supp. 3d 1300, 1310 (S.D. Fla. 2015).

In determining whether a settlement is fair, reasonable, and adequate, the

Court considers whether:

(A)   the class representatives and class counsel have adequately
      represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:
      (i) the costs, risks, and delay of trial and appeal; (ii) the
      effectiveness of any proposed method of distributing relief to
      the class, including the method of processing class-member
      claims; (iii) the terms of any proposed award of attorney's fees,
      including timing of payment; and (iv) any agreement required
      to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each
      other.

Fed. R. Civ. P. 23(e)(2). Supplementing those Rule 23(e) elements, are the

"*Bennett* factors." *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.

1984); *see also In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247,

1273-74 (11th Cir. 2021) (affirming application of Rule 23 and *Bennett* factors).

Below, Plaintiffs explain why the settlement merits approval, under both

Rule 23(e)(2) and the *Bennett* factors, before later explaining why the class

satisfies the requirements for class certification.

**A.** **The settlement is fair, reasonable, and adequate under the Rule 23(e)(2) elements.**

**1.** **Both the Plaintiffs and their counsel have adequately represented the class.**

The first factor for consideration under Rule 23(e)(2) is the adequacy of representation by the class representatives and attorneys. Courts assessing this factor ask "whether class counsel and plaintiffs 'had an adequate information base' before negotiating and entering into the settlement." *Burrow v. Forjas Taurus S.A.*, 2019 WL 4247284, at *7 (S.D. Fla. Sept. 6, 2019).

Starting with the class representatives, both Kent Bowen and Kathleen Darnell have faithfully and ably performed their roles representing the class. They actively participated in the years-long litigation, providing relevant information at counsel's request, and they stayed abreast of litigation developments throughout the case. Counsel's Prelim. Approval Decl. ¶¶ 12-13.

Plaintiffs' counsel have also adequately represented the class. Counsel have considerable experience litigating complex automotive-defect and consumer-protection class actions like this one. *Id.* ¶ 3; *see also* Dkts. 71-3, 71-4, 71-5 (firm resumes of Caplan Cobb, Gibbs Law Group, and Meyer Wilson). They deployed that experience here, conducting a thorough initial investigation and pleading a detailed initial complaint. *See* Dkt. 1; Counsel's Prelim. Approval Decl. ¶¶ 7-8.

They successfully opposed Porsche's motion to dismiss, leading to two nationwide claims being sustained. *See* Dkt. 36. They also engaged in significant formal discovery; negotiated the scope of productions from both the Defendant and a third party; and analyzed the thousands of pages of documents that were produced— including a number of highly technical documents. Counsel's Prelim. Approval Decl. ¶¶ 13-15. They met and conferred regularly with defense counsel and third-party counsel to work through objections, resolving many disputes cooperatively, while successfully litigating one discovery dispute. *Id.* ¶ 14; *see also* Dkt. 58. Counsel also retained a well-qualified expert to assist in discovery, the review of documents, and class certification. Counsel's Prelim. Approval Decl. ¶ 18. And finally, counsel spent dozens of hours in hard-fought negotiations that produced a settlement agreement that provides substantial benefits to class members—indeed, as much relief as reasonably could be expected, even if this case had been litigated through trial and Plaintiffs had prevailed there. *Id.* ¶¶ 25-26.

These efforts required counsel to devote over 2,511 hours to this case, while also advancing $74,388.63 in litigation expenses. Ex. A ¶¶ 13, 16. In light of counsel's "longstanding experience in complex consumer class action litigation," and their "dedicat[ion of] significant resources to this action," the settlement class was adequately represented. *See Pinon v. Daimler AG*, 2021 WL 6285941, at *6

(N.D. Ga. Nov. 30, 2021). In sum, the parties conducted enough discovery to be able to determine the "probability of [their] success on the merits, the range of possible recovery . . . [and] the complexity, expense, and likely duration of the litigation" before negotiating the settlement. *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1369 (N.D. Ga. 2019).

## 2. The settlement was negotiated at arm's length.

The second Rule 23(e)(2) element asks the Court to confirm that the settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). This element is a "procedural" concern, that "look[s] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B), Advisory Comm.'s Notes. As this Court has noted, Rule 23(e)(2)(B) is satisfied where "the Settlement Agreement was not the product of fraud or collusion." *Pinon*, 2021 WL 6285941, at *7.

Here, there are multiple indicia of the arm's length nature of the negotiations. First, the parties did not begin negotiating until August 2022, after the case had been pending for a year and a half. Counsel's Prelim. Approval Decl. ¶ 21. By then, the parties had already engaged in pretrial motion practice, conducted discovery, and were preparing for class certification briefing. *Id.* ¶ 18.

Second, the parties reached a settlement with the assistance of Mr. Loveland as their mediator. *Id.* ¶ 21. "[T]he involvement of a neutral . . . mediator or facilitator in the [the parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2)(A)-(B), Advisory Comm.'s Notes. "The parties settled this Action by mediation with an experienced mediator . . . which further confirms that the process was procedurally sound and not collusive." *George*, 369 F. Supp. 3d at 1369-70.

Finally, the nature of the attorneys' fee negotiations also shows the non-collusive nature of the settlement. Upon reaching consensus on the proposed class's relief at an initial mediation, the parties deferred the issue of attorneys' fees to a later mediation. Counsel's Prelim. Approval Decl. ¶ 22. They agreed that, while they would try to negotiate fees, even if they were unable to reach an agreement, they would still present the proposed settlement to the Court. *Id.* The parties then mediated a second time with Mr. Loveland, ultimately agreeing to a double-blind mediators' proposal on fees. *Id.* ¶ 23.

The Court can thus be confident that no aspect of the settlement was "the product of fraud or collusion." *See Pinon*, 2021 WL 6285941, at *7.

### 3. The quality of relief to the class weighs in favor of approval.

The third Rule 23(e)(2) element asks the Court to assess the adequacy of the settlement's relief for the class. Fed. R. Civ. P. 23(e)(2)(C)-(D), Advisory Comm.'s Notes. The Court is to consider (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of the proposed methods of distributing relief and processing claims; (3) the terms of any proposed attorneys' fees awards; and finally, (4) any agreements made in connection with the proposal. *See* Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

### i. The settlement provides strong relief for the class.

The relief Counsel negotiated for the class is strong. Most notably, Porsche will be making available full reimbursement of the costs incurred by class members to resolve the PCM rebooting, up to $7,500 per vehicle. This includes not only reimbursement for the PCM replacements (each of which cost thousands of dollars) but also reimbursement for other repairs associated with the PCM rebooting issue (including drained-battery replacements). Settl. Agrm. § II(r).

This relief is not merely retrospective. Plaintiffs' counsel has heard from class members whose vehicles continue to suffer ill effects as a result of the PCM rebooting. Counsel's Prelim. Approval Decl. ¶ 8. Such class members will have

over a year from receiving notice to bring their vehicles to a Porsche dealership for repair, and they too will be entitled to repair reimbursement. Settl. Agrm. ¶ 6.

In addition to repair costs, class members will also be entitled to reimbursement of incidental costs. This includes costs for tow trucks, rental cars, and alternative transportation such as Uber and Lyft. *Id.* § II(r). In short, a wide variety of costs stemming from the PCM rebooting will be fully reimbursed.

This is a strong result that matches what class members may have expected to receive upon winning at trial. *See Wilson v. EverBank*, 2016 WL 457011, at *9 (S.D. Fla. Feb. 3, 2016) (approving claims-made settlement providing "near-complete relief that very likely exceeds what [class members] could have recovered at trial, which is extraordinary for any settlement"). While the settlement caps per-vehicle recovery at $7,500, the parties anticipate this cap will rarely come into play, since even the most expensive repairs (PCM replacements) were typically around $4,000. *See* Counsel's Prelim. Approval Decl. ¶ 25.

In addition, the settlement recognizes that some portion of the class did not incur out-of-pocket costs because they were able to solve the problem through a "hard reset" procedure but still suffered real, compensable inconvenience as a result of the PCM rebooting. *Id.* ¶ 17. To ensure that these class members, too, are provided fair compensation, the settlement allows this portion of the class their

choice of $25 in a direct electronic payment (*e.g.*, through Venmo or PayPal) or $50 in the form of a Porsche dealer credit. Settl. Agrm. ¶ 30(a).

The total package of relief made available readily satisfies the Rule 23 standard of fair, reasonable, and adequate. The settlement affords every class member who spent money on PCM rebooting the opportunity to be made whole. It fairly compensates class members who suffered inconvenience, but no economic injury. And it provides prospective relief in the form of repair reimbursements going forward for 12 months after the final approval hearing. The strength of the settlement's relief weighs in favor of approval. *See Wilson*, 2016 WL 457011, at *2 (noting that "providing near-complete relief to class members on a claims-made basis [is an] extraordinary" result); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *20 (S.D. Fla. Apr. 13, 2016) (approving claims-made settlement as "substantively fair, offering complete relief (or better) to every interested Claimant").

### ii. Continued litigation would entail substantial cost, risk, and delay.

Settlement approval is further warranted because continued litigation would be risky, protracted, and costly. Fed. R. Civ. P. 23(e)(2)(C)(i). The settlement provides essentially complete relief now, avoiding years of continued motion practice, the uncertainty of trial, and subsequent appeals.

Continued litigation would mean re-opening discovery, including expert discovery, briefing a class certification motion, potentially followed by summary judgment, *Daubert* motions, and motions in limine, all before the parties would even reach trial. While a jury could award the class more in damages than they will receive under the settlement, "such an outcome is far from guaranteed," and would only "occur, if at all, after years of protracted litigation, including appeals." *See Pinon*, 2021 WL 6285941, at *7. Distributing to class members now relief that is likely equal to (or greater than) what a jury might award years from now weighs *heavily* in favor of approval.

### iii. The settlement provides a streamlined claims process and an effective distribution of proceeds to the class.

Next, the settlement implements an efficient and effective claims process, *see* Fed. R. Civ. P. 23(e)(2)(C)(ii), overseen by A.B. Data, a claims administrator "highly experienced in administering large class action settlements." *See Pinon*, 2021 WL 6285941, at *7.

The claims process for class members has been designed to be as simple and straightforward as possible. To claim reimbursement, class members need only provide (1) the approximate dates they owned their vehicle; (2) total unreimbursed expenses they incurred; and (3) a repair receipt or other documentation showing what they paid. Ex. 1 to Settl. Agrm. Class members who did not incur costs (or

who lack documentation of their costs) need only (1) provide the approximate dates they owned their vehicle, (2) confirm they spent some amount of time addressing the rebooting, (3) choose between a $25 payment or $50 dealer credit, and (4) electronically sign the claim form. *Id.* Filing a claim will take just a few minutes. *See Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519, at *13 (S.D. Fla. Nov. 9, 2015) (explaining that claims-made settlement was "procedurally fair" because claim form took "no more than a few minutes" and did not require the submission of supporting documents). If the settlement is approved, class members will receive payment via their preferred method (either Venmo, PayPal, direct deposit, or a paper check). Settl. Agrm. ¶ 30(a); *see Pinon*, 2021 WL 6285941, at *7 (approving settlement with check and electronic payment options).

The simplicity of the claims process is demonstrated by the robust claims rate. As to the economic claims, it is important to note that class members have until August 2024 to make claims under the settlement. Nevertheless, the settlement administrator has already received 4,357 claims. Counsel's Final Approval Decl. ¶ 7.

> **iv.** **The terms of the proposed attorneys' fees support final approval.**

Nothing about the negotiated attorneys' fee should detract from the fairness of the settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). Plaintiffs address the

appropriateness of the fee award in detail in Section II, *infra*.

<blockquote>

**v.      The parties have no other agreements pertaining to the settlement.**

</blockquote>

The final factor for consideration under Rule 23(e)(2)(C) is the existence of any agreements required to be identified by Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv). The settlement agreement currently before the Court is the only extant agreement. Counsel's Prelim. Approval Decl. ¶ 24.

<blockquote>

**4.      The settlement treats all settlement class members equitably.**

</blockquote>

The final element under Rule 23(e)(2) concerns whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways." Fed. R. Civ. P. 23(e)(2)(C)-(D), Advisory Comm.'s Notes.

Because the available relief is commensurate with the harm suffered by each individual Porsche owner or lessee, this settlement treats class members equitably. Class members who spent money on repairs related to PCM rebooting are entitled to reimbursement of the repair cost. Class members who spent money on incidental expenses like towing or alternative transportation are entitled to reimbursement of

those costs too. Settl. Agrm. § II(r). Class members whose vehicles still require PCM repairs have the right to obtain reimbursable repairs from Porsche dealers for the year following the Court's final approval hearing. *Id.* ¶ 6. And class members who dealt with rebooting, but incurred no hard costs, may claim either $25 or a $50 dealer credit. *Id.* ¶ 4. Thus, everyone in the class who spent time or money addressing rebooting will be eligible for compensation, with the amount varying based only on the actual harm incurred.

The fact that relief varies based on the degree of expense incurred is not a detriment—it's a strength. "While class members who have incurred out-of-pocket losses will be able to recover more relative to class members who have not, this allocation is fair and equitable because these class members would have had the ability to seek greater damages at trial." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *9 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part, rev'd in part*, 999 F.3d 1247 (applying Rule 23(e)(2)(D)); *see also In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618, at *31 (N.D. Ala. Aug. 9, 2022) ("In the Eleventh Circuit, 'there is no rule that settlements benefit all class members equally' so long as any differences are 'rationally based on legitimate considerations'") (citation omitted).

Finally, because all class members will provide an identical release of claims, the settlement treats all class members equitably in this regard, further supporting approval of the settlement. Settl. Agrm. § XIV; *see* Fed. R. Civ. P. 23(e)(2)(C)-(D), Advisory Comm.'s Notes.

**B.    The settlement is fair, reasonable, and adequate under the *Bennett* factors.**

In *Bennett v. Behring Corp.*, the Eleventh Circuit articulated the following list of additional factors for approving class settlements:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

737 F.2d at 986. While this analysis overlaps with some of the Rule 23(e)(2) elements, the *Bennett* factors further support approval of the proposed settlement.

**1.    Plaintiffs' likelihood of success; the complexity, expense, and duration of continued litigation; and the stage at which settlement was achieved all favor final approval.**

The first, fourth, and sixth *Bennett* factors all concern the cost-benefit calculation inherent to settlement and are thus appropriately evaluated together.

Plaintiffs cleared a "substantial hurdle[]" towards success on the merits by defeating Porsche's motion to dismiss as to their trespass to personalty and CFAA

claims. Dkt. 36; *see Pinon*, 2021 WL 6285941, at *8. While Plaintiffs and Counsel are confident in their claims, it remains "entirely possible," however, that they might not prevail on those claims at class certification, summary judgment, or trial. *Pinon*, 2021 WL 6285941, at *8. Since the settlement will provide near-full relief, the class would gain no benefit for assuming that additional risk.

This case has already proven to be "complex, expensive, and time-consuming," when considering the technology and parties involved. *See id.* As this Court reasoned in *Pinon*, if the parties continue litigating, they will "have to devote significant time" to expert discovery, class certification briefing, summary judgment motions, and motions to exclude expert testimony, before ever reaching the merits. *See id.* Moreover, even if Plaintiffs were successful at trial months or even years from now, the case would "likely undergo a protracted appellate process," during which class members "would be without any remedy." *See id.*

Finally, Plaintiffs have been able to "evaluate the desirability of the settlement as opposed to continuing with the litigation." *See id.* at *9. This Court recently approved a settlement reached at a similar stage of litigation, noting that "[t]he settlement was not achieved until after a ruling on a motion to dismiss and after both sides engaged in extensive discovery," as here. *See id.* Given the stage of

the litigation and the favorability of the settlement currently before the Court, approval is warranted under the first, fourth, and sixth *Bennett* factors.

> **2. The range of possible recovery and the point at which the settlement was reached is fair, reasonable, and adequate, favor approval.**

The second and third *Bennett* factors compare the proposed relief against the range of possible recovery. Here, Plaintiffs believe they have recovered what they may reasonably have hoped to recover at trial. The settlement accounts for the expenses class members incurred, offers to reimburse those expenses in full with a cap that is so generous it is unlikely to affect many (if any) class members, and also compensates those class members who suffered only a loss of time and inconvenience—a challenging harm to remedy in class cases. *See* Counsel's Prelim. Approval Decl. ¶¶ 25-26; *Dierkes v. Crawford Orthodontic Care, P.C.*, 284 Ga. App. 96, 100 (2007) ("The law infers some damage from the invasion of a property right and if no evidence is given of any particular amount of loss, declares the right by awarding what it terms nominal damages.").

Since "courts regularly find settlements to be fair even where '[p]laintiffs have not received the optimal relief,'" the Court should grant final approval to this settlement, which provides meaningful, comprehensive, and near-optimal relief. *See Pinon*, 2021 WL 6285941, at *9 (citation omitted).

### 3. Plaintiffs will address the reaction of class members in its reply brief.

The fifth element under the *Bennett* factors is the "the substance and amount of opposition to the settlement." As of April 24, 2023, no class members have objected to the settlement, and only two class members have attempted to opt-out. Counsel's Final Approval Decl. ¶ 8. The deadline for class members to opt-out or object to the settlement is May 19, 2023. Dkt. 73 ¶ 32. Since the deadline for class members to file an objection or opt-out of the settlement has not yet passed, Plaintiffs will provide further briefing concerning this element in their reply brief.

## II. The Court should approve Plaintiffs' requested attorneys' fees and litigation-cost reimbursements.

Next, Plaintiffs respectfully request that the Court approve their request for $1,975,000 in attorneys' fees and $74,388.63 in litigation-cost reimbursements. Porsche agreed to pay these amounts during a separate mediation, after the parties had already entered into a binding term sheet memorializing the class relief. Counsel's Prelim. Approval Decl. ¶ 22. The requested fees and cost reimbursements will in no way reduce the amount paid to the class. *Id.*

The requested fee constitutes less than 25% of the gross settlement value, rendering it presumptively reasonable. *See Arkin v. Pressman, Inc.*, 38 F.4th 1001, 1005 n.3 (11th Cir. 2022). While the Court is not required to apply the *Camden*

factors to presumptively reasonable fees, *see Venerus v. Avis Budget Car Rental, LLC*, 2022 WL 18495246, at \*3 (M.D. Fla. Dec. 14, 2022), Plaintiffs nevertheless explain below how the *Camden* factors confirm the propriety of the request. *See generally Camden I*, 946 F.2d at 774-75. Similarly, a lodestar cross-check reveals that the requested fee will provide for a multiplier of only 1.26, well below multipliers commonly awarded in this Circuit. *See Pledger v. Reliance Tr. Co.*, 2021 WL 2253497, at \*7 (N.D. Ga. Mar. 8, 2021).

Finally, Plaintiffs' litigation expenses were "reasonable and necessarily incurred," as they explain below. *See Pinon*, 2021 WL 6285941, at \*20 (citing Fed. R. Civ. P. 23(h)). Plaintiffs accordingly request that the Court approve the reimbursement of those costs.

### A. Plaintiffs' requested fee award is presumptively reasonable under the percentage-of-the-fund method.

In the Eleventh Circuit, fees paid to class counsel in connection with class action settlements are typically calculated as a percentage of the gross settlement value. *Camden I*, 946 F.2d at 773-75. Where settlements are the "functional equivalent" of common fund settlements, "*Camden I*'s percentage-of-recovery rule [applies] to claims-made settlements" with equal force. *Poertner v. Gillette Co.*, 618 F. App'x 624, 628 n.2 (11th Cir. 2015) (noting that claims-made and common fund settlements are, in fact, "fully synonymous") (quoting 4 William B.

Rubenstein, *Newberg on Class Actions* § 12:18 (5th ed. 2011)). *Camden I*'s percentage-of-the-fund method remains "appropriate even where the fee award will be paid separately by Defendants." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014); *accord In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2023 WL 2284684, at *12 (S.D. Fla. Feb. 28, 2023).

"There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee . . . ." *Camden I*, 946 F.2d at 774. The *Camden* court, observing that most fee awards fell between 20% to 30% of the common fund, established the 25% fee as a presumptive benchmark award. *Id.* (citing *Newberg*, § 2.08). In the decades since *Camden I*, the average fee in this Circuit is now "at or above 30%," with courts "routinely award[ing] attorneys' fees of *33 percent or more*" of settlement funds. *Pinon*, 2021 WL 6285941, at *17 (emphasis in original).

In cases like this one, where the total fund is uncapped, courts often rely on experts to assess the value of the settlement. *See, e.g.*, *Pinon*, 2021 WL 6285941, at *16-17; *Fruitstone v. Spartan Race, Inc.*, 2021 WL 2012362, at *3 (S.D. Fla. May 20, 2021). To that end, Plaintiffs retained the services of Samuel Hewitt, CPA, a forensic accountant at B. Riley Financial, Inc., with considerable experience

analyzing class action settlements, to calculate the value of this settlement. *See* Ex. B (Declaration of Samuel Hewitt; "Hewitt Decl.") ¶¶ 1-2. Mr. Hewitt has authored dozens of expert reports explaining his financial analyses and has testified in matters before state and federal courts. *See generally* App'x 1 to Hewitt Decl. at 1-6.

In his analysis, Mr. Hewitt relied on documents Porsche produced in discovery as well as publicly available information to assess the extent to which class members have incurred out-of-pocket costs related to the PCM rebooting at issue. *See* Hewitt Decl. ¶¶ 11-12 (performing linear regression projecting how many more PCM replacements the May 2020 software malfunction likely caused and their estimated cost). He then added the value of PCM replacements to the other monetary relief the settlement makes available to class members. *See id.* ¶¶ 13-14. Based on this analysis, he estimated the value of the settlement to be $10,034,851, exclusive of battery replacements, incidentals, and the additional $25 available in dealer credits for claimants selecting that option. *See id.* ¶¶ 15-16.

Because "courts add the requested fee and expenses to the denominator," *Pinon*, 2021 WL 6285941, at *17, the $1,975,000 fee Plaintiffs request represents at most 17% of the gross settlement fund. *See id.* (calculating fee based on a "denominator" that included the value of the settlement, claims administration

expenses, litigation costs, and the requested fee); *see also* Counsel's Final Approval Decl. ¶ 12 (calculating fee as 16.14% of the fund by dividing the requested fee award by the sum of (1) Mr. Hewitt's estimated settlement value, (2) the requested fee, (3) the requested expenses, and (4) settlement administration costs). Even if the fee were calculated only as a percent of the net settlement value, which is to say the monetary relief being made available directly to the class, at 20%, the fee would remain presumptively reasonable. *See* Counsel's Final Approval Decl. ¶ 12.

Not only is a 17% fee award relatively modest when compared to similar class action settlements within this Circuit, *see, e.g.*, *Pinon*, 2021 WL 6285941, at *17, the request is even more reasonable considering the results Class Counsel achieved for the class. The settlement here makes full monetary relief available to virtually all class members. In light of the strong relief provided, and a fee falling well below the Eleventh Circuit's benchmark, the requested fee warrants approval.

**B.    Class Counsel's requested fee is also reasonable under the *Camden* factors.**

In a case like this, where the requested fee falls below the 25% benchmark "presumed to be reasonable," percentage alone is enough to guide the Court. *See Venerus*, 2022 WL 18495246, at *3. Indeed, there is precedent in this Circuit for approving fees of 25% or less without further analysis, because where a fee request

falls below the benchmark, "the Court is not required to consider the [*Camden I*] factors in its reasonableness determination." *See id.* (approving fee of 25% and addressing *Camden* factors only "briefly"); *see also Arkin*, 38 F.4th at 1005 n.3 ("Since awards of up to 25% of the common fund are presumptively reasonable in this circuit, district courts must apply the twelve [*Camden I*] factors before approving *a greater award* to class counsel.") (emphasis added).

Nevertheless, Plaintiffs detail below why each factor weighs in favor of approval. *See Camden I*, 946 F.2d at 772 n.3 (listing the 12 factors district courts should consider, hereinafter the "*Camden*" factors) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

### 1. The time and labor required.

The first *Camden* factor supports the requested fee given the considerable time and effort Class Counsel expended litigating this action. Plaintiff Bowen filed the original complaint in January 2021. Dkt. 1. Over the intervening two-plus years, Class Counsel have spent 2,478 attorney hours and 33 non-attorney hours litigating this action from investigation through April 21, 2023. *See* Counsel's Final Approval Decl. ¶ 13. These hours were justified considering "the issues, the complexity of the case, [and] the manner in which the case was defended," as Class Counsel defeated a significant portion of Porsche's motion to dismiss (Dkt.

36); prevailed on a motion to compel (Dkt. 59); and worked with experts to prepare for class certification and the eventual settlement. Counsel's Final Approval Decl. ¶ 10. The time and labor Counsel expended weigh in favor of Plaintiff's fee request. *See Pinon*, 2021 WL 6285941, at *18.

### 2.  The novelty and difficulty of the relevant questions.

Class Counsel successfully navigated novel and challenging questions of law and fact throughout this litigation. In opposing Porsche's motion to dismiss, Counsel briefed several complex legal issues. Although not successful on all claims, the Court ultimately agreed with Plaintiffs' position on Georgia's unique choice-of-law rules and rejected Porsche's argument that application of Georgia law would violate due process. *See, e.g.*, Dkt. 21 at 11-16; Dkt. 32 at 1-3; Dkt. 36 at 15-21. Counsel also addressed Porsche's reliance on a brand-new Supreme Court decision relating to their CFAA claim—and again, the Court agreed with Plaintiffs. Dkt. 33 (distinguishing *Van Buren v. United States*, 141 S. Ct. 1648 (2021), a decision handed down only days prior); Scott T. Lashway & Matthew M.K. Stein, *Signs Inscribed on A Gate: The Impact of* Van Buren v. United States *on Civil Claims Under the Computer Fraud and Abuse Act*, 44 W. NEW ENG. L. REV. 109, 114 (2022) (noting that this Court was among the first to analyze "critical questions" left unanswered by *Van Buren*).

As for the facts, Counsel worked with an expert to familiarize themselves with the satellite radio, remote software update, and automotive technologies relevant to this case. *See* Counsel's Final Approval Decl. ¶ 10. Because discovery revealed that more than one corporate actor had potentially relevant information, Counsel served a third-party subpoena and negotiated responsive productions. Dkt. 44. Counsel conducted these efforts – including factual investigation, discovery, and expert work – all with an eye toward preparing the motion for class certification. Counsel's Final Approval Decl. ¶ 10. This case thus "involved highly technical knowledge of complex product liability and Rule 23 class action law," further favoring approval of the fee. *See Pinon*, 2021 WL 6285941, at *18.

### 3. The skill required to perform the services and the experience, reputation, and ability of Class Counsel.

Given the novelty and difficulty of the questions involved, this case required a high level of experience and skill. As this Court acknowledged in granting preliminary approval, *see* Dkt. 73 ¶¶ 6-8, the attorneys prosecuting this action are experienced class-action, consumer-protection, and automotive-defect litigators. *See* Dkts. 71-3, 71-4, 71-5 (firm resumes demonstrating Class Counsel's decades of experience). Counsel brought their experience to bear in this action, using their knowledge and experience to plead viable claims, develop the necessary evidence,

and otherwise position the case for a strong class recovery. The third *Camden* factor therefore also supports the requested fee.

### 4. The preclusion of other employment.

While Class Counsel are proud to have represented this class and to have delivered the settlement before the Court, their devotion of time and resources to this litigation did preclude other work. *See* Counsel's Final Approval Decl. ¶¶ 10, 13. In total, 11 attorneys, paralegals, and other staff from Counsel's firms worked on this case. *Id.* ¶ 13. "But for the time and effort they spent in this case . . . Plaintiffs' attorneys would have spent significant time on other matters." *See Pinon*, 2021 WL 6285941, at *18. Thus, the preclusion of counsel's other employment, too, weighs in favor of granting the requested fee.

### 5. The customary fee and whether it is fixed or contingent.

The fifth and sixth *Camden* factors consider the customary fee for similar work and whether the fee is fixed or contingent. *See Johnson*, 488 F.2d at 718. Class actions are customarily prosecuted on a contingency basis because the individual plaintiffs do not stand to recoup enough damages to make hourly arrangements economical. *Gunthert v. Bankers Standard Ins. Co.*, 2019 WL 1103408, at *6 (M.D. Ga. Mar. 8, 2019). Here, for example, while the Plaintiffs suffered thousands of dollars of damages—amounts that are significant to them

personally—these damages were dwarfed by the litigation costs needed to successfully prosecute this case. Accordingly, the fees for complex civil litigation brought on a contingency basis "customarily range from 33.3% to 40% of the recovery." *In re Equifax*, 2020 WL 256132, at \*33. While contingency-fee cases often justify an even larger award due to the risk undertaken, *see id.*, the less-than-17% fee requested here falls well below the customary fee. *Accord Pinon*, 2021 WL 6285941, at \*18.

### 6. The amount involved and the results obtained.

The "most important factor" in determining an award of attorneys' fees is the amount involved and the results obtained. *Cabot East Broward 2 LLC v. Cabot*, 2018 WL 5905415, at \*5 (S.D. Fla. Nov. 9, 2018) (citing *Allapattah Servs. Inc., v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204-05 (S.D. Fla. 2006)). Under the settlement, Porsche must reimburse virtually all out-of-pocket costs that class members incurred to resolve the PCM rebooting that led to this litigation. *See* Settl. Agrm. ¶ 4; Counsel's Prelim. Approval Decl. ¶ 25. This covers not only PCM replacements (which cost thousands of dollars each), but also other related repairs (including PCM repairs and battery replacements) as well as incidental expenses (like towing and alternative transportation). This settlement, in short, gives class members the opportunity to be made whole. It also fairly compensates those class

members who suffered inconvenience, including those who spent time resolving PCM issues but who did not end up incurring out-of-pocket costs. Settl. Agrm. ¶ 4. And it provides prospective relief in the form of reimbursable repairs for those who repair their PCMs in the future. *Id.* ¶ 6. The strength of this relief weighs in favor of awarding the requested fee. *See Allapattah*, 454 F. Supp. 2d at 1205 (where "[f]ull and complete recovery was achieved on behalf of the entire Class," the result obtained was "extraordinary").

### 7.   Awards in similar cases.

The final *Camden* factor looks to awards in similar cases. Other courts in this Circuit have approved higher-percentage awards of the class fund for substantially similar work. In *Pinon*, for example, this Court approved a settlement that also arose from an alleged auto defect following several years of litigation. 2021 WL 6285941, at *1. In approving the requested fee (which represented between 21% and 23% of the value of the gross settlement fund) the Court noted that the award "falls well below the percentage awarded in similar cases in this circuit." *Id.* at *17; *see also Reyes v. AT&T Mobility Servs., LLC*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) ("Class Counsel's request for one-third of the settlement fund is consistent with the trend in this Circuit."). The higher

awards in similar cases favor approving the fee here.

**C.** **Class Counsel's requested fee is also reasonable under a lodestar cross-check.**

"Although a lodestar 'cross-check' is not required [in common fund cases], it may be used 'to ensure that the fee produced by the chosen method is in the ballpark of an appropriate fee.'" *Pledger*, 2021 WL 2253497, at *7 (quoting *In re Home Depot Inc.*, 931 F.3d 1065, 1091, n.25 (11th Cir. 2019)). Here, Class Counsel expended 2,511 hours litigating this case through April 21, 2023, resulting in a lodestar of approximately $1,562,998 — an effective multiplier of 1.26. Counsel's Final Approval Decl. ¶¶ 14-15. This multiplier is in line with (and largely below) the multipliers commonly awarded in this Circuit. *See Pledger*, 2021 WL 2253497, at *8 (collecting cases within Eleventh Circuit where lodestar multipliers ranging between 1.6x to 5x were approved, noting that "[3x] appears to be the average"). The multiplier here will only decrease as Counsel spend more time effectuating the settlement — working with absent class members, the settlement administrator, and Defendant over the coming year during which class members will remain able to submit claims. Counsel's Final Approval Decl. ¶ 15.

**D.** **The Court should approve Class Counsel's request for reimbursement of their reasonable costs.**

Finally, the parties' Settlement Agreement authorizes Plaintiffs to seek full

reimbursement of their litigation costs, up to $75,000. Settl. Agr. ¶ 38. To date,

Class Counsel have incurred a total of $74,388.63 in litigation costs in this case,

which they advanced on behalf of the class and which they have thus far not had

reimbursed. Counsel's Final Approval Decl. ¶ 16. These litigation costs,

summarized in counsel's accompanying declaration, include expenses for experts,

mediation fees, filing fees, and an electronic discovery database. *Id.*

Negotiated cost reimbursements are "granted as a matter of course in

common fund cases." *Amin v. Mercedes-Benz USA, LLC*, 2020 WL 5510730, at *5

(N.D. Ga. Sept. 11, 2020). And because counsel's costs here were "reasonable and

necessarily incurred on behalf of the Class," the Court should approve Porsche's

reimbursement of counsel's costs. *Pinon*, 2021 WL 6285941, at *20.

## CONCLUSION

Plaintiffs and their counsel respectfully request that this Court finally

approve the settlement and award Class Counsel $1,975,000.00 in attorneys' fees

and $74,388.63 in litigation-expense reimbursement.[3] Plaintiffs' counsel will

submit a proposed order prior to the final hearing.

---

[3] Defendant does not oppose the relief sought by this motion and agrees that the Court should grant final approval of the proposed settlement and award the fees and costs requested. By not opposing this relief, Defendant does not concede the factual basis for any claim and denies liability. The description of the proceedings, as well as legal, factual and expert arguments, are Plaintiffs', and Defendant may disagree with certain of those characterizations and descriptions.

Respectfully submitted this 28th day of April, 2023.

By: */s/ Matthew R. Wilson*
Matthew R. Wilson (*pro hac vice*)
mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice*)
mboyle@meyerwilson.com
MEYER WILSON CO., LPA
305 West Nationwide Boulevard
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*/s/ T. Brandon Waddell*
Michael A. Caplan
Georgia Bar No. 601039
T. Brandon Waddell
Georgia Bar No. 252639
CAPLAN COBB LLC
75 Fourteenth Street, NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
bwaddell@caplancobb.com

*/s/ David Stein*
David Stein (*pro hac vice*)
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ds@classlawgroup.com

*Counsel for Plaintiffs and the Proposed Class*

## LOCAL RULE 7.1(D) CERTIFICATION

The undersigned counsel certifies that the foregoing document has been prepared with one of the font and point selections approved by the Court in LR 5.1(B).

This 28th day of April, 2023.

*/s/ T. Brandon Waddell*
T. Brandon Waddell
bwaddell@caplancobb.com

*Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 28th day of April, 2023.

*/s/ T. Brandon Waddell*
T. Brandon Waddell
bwaddell@caplancobb.com

*Counsel for Plaintiffs and the Proposed Class*